**SECOND BREATH, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GURSKI), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 15, 2002.

Decided May 16, 2002.

Reargument En Banc Denied July 8, 2002.

Lawrence C. Beck, Philadelphia, for petitioner.

James J. Hollawell, Bensalem, for respondent.

BEFORE: LEADBETTER, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Second Breath (Employer) petitions for review of a determination of the Workers' Compensation Appeal Board (Board), affirming the decision of a Workers' Compensation Judge (WCJ), which granted the claim petition filed by Gary Gurski (Claimant). We affirm.

On October 1, 1997, Claimant allegedly injured his back while employed as a respiratory therapy technician by Employer. On June 24, 1998, Claimant filed a claim petition alleging that on October 1, 1997, he was helping a nurse technician lift a patient in the shower room when the nurse technician slipped on the wet floor causing Claimant to bend forward and throwing him off balance. Claimant felt a "tweek in his low back which pain radiated into his hip and right leg." (R.R. at 1a). The petition further alleged that the injury caused Claimant to stop working on May 4, 1998. Employer filed an answer denying the allegations.

Hearings were held before a WCJ at which Claimant testified that he began working for Employer as a respiratory therapy technician in October of 1993. Additionally, Claimant testified that his job duties required bending and lifting patients who ranged in age from infants to twenty-two year-old adults. Claimant further testified that he injured his back on October 1, 1997, while he and a nurse technician attempted to transfer an adult patient from a "geri chair" to a stretcher in the shower room. Claimant explained that the nurse technician slipped on the wet tile which caused Claimant to be pulled forward in an abrupt bending motion. Claimant further testified that he felt a tweek in his back which he reported to the nurse who was on duty that day. (R.R. at 20a–23a).

Thereafter, Claimant testified that his back pain became progressively worse and began radiating to his hip, thigh and right leg until he was no longer able to move his hip or walk. Claimant saw his family physician, Dr. Gringeri, who ordered x-rays and a CT scan. Claimant further testified that he was out from work during the period between November 5, 1997, through November 10, 1997. Claimant also treated with a neurosurgeon, Dr. Scogna, who ordered Claimant to undergo epidural injections, which, Claimant testified, eased the pain and numbness that he experienced in his right leg. (R.R. at 24a–28a).

On March 23, 1998, Claimant testified that he signed up to work a four-hour overtime shift from 11:00 p.m. to 3:00 a.m. When Claimant's shift replacement did not yet report to work at approximately five to ten minutes after Claimant's overtime shift ended, he left work because he had to go home to care for his family. However, Claimant testified that before he left work,

he discussed the situation with other staff members who told him that his departure would not create any problems since there was enough staffing scheduled for that shift. Claimant testified that he did not call his immediate supervisor because he did not want to wake her up at three o'clock in the morning. (R.R. at 29a–35a).

Additionally, Claimant testified that while on-duty on the evening of April 29, 1998, he entered the living room to discuss a patient with a nurse who was on her break. Claimant admitted that the television was on at the time. (R.R. at 38a). Thereafter, Claimant testified that he participated in two fire drills that evening, after which his back pain increased. Claimant testified that the fire drills required him to take patients out of bed, put them in wheelchairs, disconnect their equipment, hook them up to transportation equipment and wheel them outside. Claimant worked the following day even though he was experiencing increased pain. On or about May 1 or 2, 1998, Claimant informed his immediate supervisor that he needed to see Dr. Gringeri because of his back pain. Dr. Gringeri treated Claimant on May 4, 1998, and provided him with a note restricting him from work. (R.R. at 274a). Claimant testified that he intended to give this note to his supervisor at a meeting on May 6, 1998. However, Claimant was terminated at that meeting.[1] (R.R. at 43a–51a). Claimant further testified that he still experiences constant pain from his back to his hip, right leg and into his right foot and continues to treat with physicians and take medication. Finally, Claimant testified that he does not believe that he is able to return to his pre-injury employment since he is un-able to lift and bend as the job requires. (R.R. at 52a–56a).

Additionally, Claimant presented Dennis Ivill, M.D., board certified in physical medicine, who first examined Claimant on June 10, 1998, following a referral from Dr. Gringeri. Dr. Ivill testified that he reviewed Claimant's medical history, diagnostic tests and accompanying medical reports. Dr. Ivill diagnosed Claimant with biltaeral lower extremity lumbar radiculopathy on the right greater than left and secondary to multiple disc herniations. Dr. Ivill ordered Claimant to undergo a MRI and restricted him from returning to his pre-injury job. Dr. Ivill testified that the MRI revealed mild disc bulges at L3–4 and L5–S1 as well as a small central disc protrusion at L5–S1. Moreover, Mr. Ivill opined within a reasonable degree of medical certainty that Claimant's injuries were directly related to the injury he sustained at work on October 1, 1997. (R.R. at 94a–96a). Dr. Ivill further testified that his physical examination of Claimant and the results of an EMG were both positive for a radiculopathy which is consistent with Claimant's complaints and findings of a CAT scan and MRI. (R.R. at 97a, 100a–102a).

Thereafter, Dr. Ivill continued to treat Claimant approximately every two months. Dr. Ivill testified that he last examined Claimant on November 8, 1998, at which time he diagnosed Claimant with a right S1 radiculopathy. Dr. Ivill recommended physical therapy treatment as a medically appropriate and necessary standard of care to treat Claimant's radiculopathy. Furthermore, Dr. Ivill testified that Claimant could not return to his pre-injury employment but might be able to perform a part-time sedentary or light-duty job. Fi-

---

1. We note that Claimant filed a claim petition after being terminated from his employment with Employer.

nally, Dr. Ivill testified that since Claimant is almost at maximum medical improvement and still experiencing pain, Claimant would most likely need surgical intervention. (R.R. at 104a–107a).

In opposition, Employer presented Victor Frankel, M.D., board certified in orthopedic surgery, who examined Claimant on November 3, 1997. Dr. Frankel testified that he reviewed a number of documents concerning Claimant's medical problems including films, reports, x-rays and the results of a CAT scan and a MRI. Additionally, Dr. Frankel testified that the CAT scan, MRI and x-ray reports revealing changes in the lumbar spine did not account for Claimant's symptoms of groin and anterior thigh pain. Dr. Frankel diagnosed Claimant with advanced hip arthritis and restricted motion which caused Claimant to complain of pain in his groin and anterior thigh. Dr. Frankel opined within a reasonable degree of medical certainty that Claimant's medical complaints were not related to the incident which occurred on October 1, 1997. (R.R. at 136a–138a). Finally, Dr. Frankel testified that he would not restrict Claimant from returning to his prior employment as a respiratory therapist. (R.R. at 151a–153a).

Additionally, both Claimant and Employer admitted into evidence as joint exhibits the depositions of six people, the relevant excerpts of which follow. First, Lalenya Kramer, employed in the human resources department of Positive Managers Management Corporation (Positive Managers),[2] testified by deposition that Claimant's job description included frequent bending, standing and lifting objects up to fifty pounds. Additionally, Ms. Kramer testified that on October 27, 1997, she received an employee incident report completed by Claimant which provided that Claimant injured his back at work.

Ms. Kramer further testified that she completed a disability form stating that Claimant would be disabled from work from November 5, 1997, until November 10, 1997. The form also provided that upon Claimant's return to work, he was restricted from lifting. Moreover, Ms. Kramer acknowledged that a physical examination performed on Claimant dated February 24, 1998, restricted Claimant from bending or lifting anything beyond Claimant's comfort level. (R.R. at 206a–211a).

Regarding the night of March 23, 1998, Ms. Kramer testified that Claimant worked his scheduled overtime shift until 3:00 a.m., and then left before his replacement came into work. (R.R. at 215a). Ms. Kramer testified that there was no written policy concerning the proper actions of an employee whose replacement did not show up and in fact, conceded that the employee handbook provided that an employee's action "depends on the situation." (R.R. at 239a). Additionally, Ms. Kramer testified that the maintenance coordinator alleged that Claimant was watching television instead of performing his job duties on April 29, 1998. Ms. Kramer testified that although she considered the allegation to be a serious offense, she conducted no investigation into the matter. (R.R. at 228a–229a). Finally, Ms. Kramer testified that she did not inform Claimant that he would be terminated at the meeting scheduled for May 6, 1998, or advise him to bring an attorney to the meeting. (R.R. at 233a–234a).

Next, the deposition of Mary McCarty, employed as a nurse technician by Employer, was admitted. Ms. McCarty testified that Claimant was supposed to work until 3:00 a.m. on March 23, 1998. Ms. McCarty further testified that Claimant worked until that time and left before his

---

**2.** Positive Managers is the managing agent of Employer.

replacement came into work. Finally, Ms. McCarty testified that Claimant was unsure of what he should do about his replacement not reporting to work on time to relieve him. However, Ms. McCarty testified that Claimant needed to go home to care for his child. (R.R. at 362a–364a).

Additionally, Michelle Cloud, a registered nurse employed by Employer, testified by deposition that she did not recall whether Claimant was supposed to work a half shift or full shift on the night of March 23, 1998. Ms. Cloud further testified that Claimant left after 3:00 a.m. without any discussion about his departure. (R.R. at 163a–165a). Finally, Ms. Cloud testified that on April 29, 1998, she saw Claimant wheel a television into the living room, turn the television on and watch it. (R.R. at 172a–177a).

The deposition of Celeste DeShiell, the president of Positive Managers and the owner of Employer, was also presented. Ms. DeShiell testified that she was not familiar with Claimant's daily job responsibilities nor did she participate in Claimant's job evaluations. (R.R. at 287a–288a). Ms. DaShiell testified that Claimant's alleged work injury was not the basis for his termination. (R.R. at 311a). Finally, Ms. DaShiell testified that Claimant was terminated due to the events which occurred on March 23, 1998, and April 29, 1998. (R.R. at 316a).

Next, Alexa Sweeney, Claimant's immediate supervisor, testified by deposition that she last evaluated Claimant's job performance in October of 1997, at which time she reported nothing negative about Claimant's job performance. Additionally, Ms. Sweeney testified that lifting was not part of Claimant's job description and, in fact, lifting patients was a job duty of the nurses and nurse technicians. (R.R. at 326a–328a). With regards to the night of March 23, 1998, Ms. Sweeney testified that

Claimant was scheduled to work a full eight-hour shift but left work in the middle of his shift before his replacement arrived without notifying her, his immediate supervisor. Ms. Sweeney further testified that she did not discipline Claimant's replacement for not coming into work but instead, took responsibility for the problem herself since she is accountable for ensuring that everyone is aware of the weekly schedule. (R.R. at 333a–335a). Finally, Ms. Sweeney testified that in May of 1998, Claimant was performing only his bare minimum job responsibilities. (R.R. at 342a).

Finally, the deposition of John Reed, a respiratory therapist employed by Employer, was presented. Mr. Reed testified that on the night of March 23, 1998, Claimant was scheduled to work until 3:00 a.m. Mr. Reed also testified that he was not a party to any discussions with Claimant or anyone else concerning Claimant's reasons for leaving work at the end of his shift that night. (R.R. at 379a–380a).

Thereafter, the WCJ made the following Findings of Fact:

10. The testimony of the Claimant has been reviewed and considered in its entirety and is accepted as credible.

. . .

13. The Workers' Compensation Judge has reviewed and considered the testimony of Dr. Ivill and Dr. Frankel. The greater weight for belief is given the testimony of Dr. Ivill, whose testimony is accepted as credible in its entirety. When the diagnoses, opinions and recommendations of Dr. Frankel conflict with and/or disagree with the diagnoses, opinions, and recommendations of Dr. Ivill, they are rejected as not credible.

Dr. Ivill's diagnosis and opinions of the Claimant's condition is based on

physical examination of the Claimant with clinical observations and findings, the credible history given by the Claimant, his review of the films and reports of objective diagnostic tests, they are consistent with diagnoses, opinions, observation, presenting complaints of the Claimant and reports of symptoms by the Claimant and their onset.

. . .

17. The Claimant on March 23, 1998, worked four hours of overtime from 11PM to 3AM, leaving at approximately 3:35AM, with his reasons for leaving accepted as credible and not constituting an abandonment of his job duties and responsibility as a respiratory therapy technician.

. . .

22. The Claimant on May 6, 1998, was terminated from employment with [Employer] through no fault of his own.

. . .

31. The Employer did not have a reasonable basis for contest until the January 19, 1999 deposition testimony of Victor Robert Frankel, M.D. The Employer knew of the Claimant's work injury which occurred October 1, 1997, completed a report of injury, filed a report with the Commonwealth of Pennsylvania, referred the Claimant to a Workers' Compensation insurance carrier, referred the Claimant to a panel physician and was aware of his ongoing complaints of pain and its relationship to its October 1, 1997 work injury. The reasons for the Employer's termination of the Claimant are found to be not credible. The Claimant's attorney has expended legal time and effort to attend at least two hearings, participate in the deposition of testimony of two medical witnesses, six fact witnesses and prepare a brief containing Findings of Fact, Conclusions of Law and Order. The contingent fee agreement of 20% between the Claimant and his attorney of record is approved and is assessed against the Employer, payable by the Employer from October 1, 1997 through January 19, 1999 and not deducted from Claimant's compensation.

(WCJ's Findings of Fact Nos. 10, 13, 17, 22, 31, WCJ's Decision at 3–7, 9). Additionally, the WCJ rejected testimony of the following witnesses as not credible when found to be in conflict and/or not corroborating Claimant's testimony: Ms. Cloud, Mr. Reed, Ms. McCarty, Ms. Sweeney, Ms. DaShiell and Ms. Kramer. (WCJ's Findings of Fact Nos. 25–30, WCJ's Decision at 7–8). The WCJ concluded that Claimant met his burden of proving that he suffered an injury on October 1, 1997, while in the course and scope of his employment with Employer. Specifically, the WCJ held that Claimant was entitled to total disability benefits from November 5, 1997, through November 10, 1997, as well as temporary total disability benefits beginning May 3, 1998, ongoing. Employer appealed to the Board and the Board affirmed.[3]

■■■ On appeal to this Court,[4] Employer argues that the Board erred by

---

3. Prior to the Board's decision, it granted Employer's request for a supersedeas concerning the award of attorney fees for an unreasonable contest. The Board denied Employer's supersedeas request in all other respects.

4. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *See* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

affirming the WCJ's decision that Claimant met his burden of proving a work-related disability. Additionally, assuming *arguendo* that Claimant met his burden of proof regarding the claim petition, Employer asserts that Claimant's benefits should have been suspended since Claimant was terminated from his employment for good cause and therefore did not experience a loss of earnings due to his work-related injury. Finally, Employer asserts that the WCJ's decision awarding Claimant attorney fees based on Employer's unreasonable contest was in error.[5] We disagree.

 In the context of a workers' compensation claim petition, the law is well settled that a claimant bears the burden of establishing the right to compensation and all of the elements necessary to support an award, including the duration and extent of the disability alleged. *See School District of Philadelphia v. Workers' Compensation Appeal Board (Lanier)*, 727 A.2d 1171 (Pa. Cmwlth.1999); *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). The WCJ can accept or reject the testimony of any witness, in whole or in part. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378 (Pa. Cmwlth.1997), *petition for allowance of appeal denied*, 553 Pa. 701, 718 A.2d 787 (1998). Moreover, questions of credibility are within the sole province of the WCJ and a reviewing court is not to reweigh the evidence or review the credibility of witnesses. *Lehigh County Vo–Tech School v.*

*Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995). Finally, the fact that one party to a proceeding may view testimony differently is not grounds for reversal if substantial evidence supports the lower tribunal's findings. *See Tapco, Inc. v. Unemployment Compensation Board of Review*, 168 Pa. Cmwlth. 292, 650 A.2d 1106 (1994).

Here, Claimant credibly testified that he injured his back while helping a patient onto a stretcher on October 1, 1997. Additionally, Claimant testified that he was out from work during the period between November 5, 1997, through November 10, 1997. (R.R. at 24a–28a). Moreover, Ms. Kramer testified that she completed a disability form stating that Claimant was disabled during that period due to the October 1, 1997, injury.[6] Ms. Kramer further testified that Claimant returned to work with restrictions from bending and lifting. Finally, Ms. Kramer testified that she received a report after a physical examination of Claimant was performed on February 24, 1998, which indicated that Claimant was restricted from bending and lifting. (R.R. at 209a–210a).

Having reviewed the evidence in its entirety, we conclude that the WCJ properly determined that Claimant met his burden of proving that he sustained a work-related injury which caused him to be totally disabled during the period of November 5, 1997, through November 10, 1997. It is undisputed that Claimant returned to work without any loss of earnings from the period between November 11, 1997, through

---

*Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth.436, 550 A.2d 1364 (1988).

**5.** We note that Employer also argues that the WCJ erred in calculating Claimant's award of benefits. However, Employer failed to raise this issue in its appeal from the WCJ's decision. (R.R. at 384a). Therefore, we conclude

that the issue is waived and will not be further addressed. *See* Pa. R.A.P. 1551 (issues not raised before the government unit are waived and cannot be raised for the first time on appeal).

**6.** It is undisputed that Claimant returned to work on November 11, 1997.

and including May 2, 1998. Our inquiry now shifts to whether Claimant is entitled to benefits after that date. Employer asserts that Claimant is not entitled to benefits after May 2, 1998, because his loss of earning power resulted from his termination for work-related misconduct and not his back injury. Contrary to Employer's assertions, Claimant argues he is entitled to benefits from May 3, 1998, ongoing because, as of May 4, 1998, Dr. Gringeri had restricted him from work.

As indicated above, the burden is initially on the claimant to establish a loss of earnings from a work-related injury. Where, as is the situation before us, the employer alleges that the claimant's loss of earnings is the result of a post-injury involuntary discharge, the employer bears the burden of proof. *Greene v. Workers' Compensation Appeal Board (Hussey Copper, Ltd.)*, 783 A.2d 883 (Pa. Cmwlth.2001), *petition for allowance of appeal denied*, —— Pa. ——, 796 A.2d 987 (2002). The employer must prove that suitable work was available or would have been available but for the circumstances which merit allocation of the consequences of the discharge to the claimant, such as the claimant's lack of good faith.[7] *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 560 Pa. 12, 742 A.2d 649 (1999). Moreover, the WCJ, as fact finder, determines whether a claimant was discharged for conduct evidencing lack of good faith. *Champion v. Workers' Compensation Appeal Board*

*(Glasgow, Inc.)*, 753 A.2d 337 (Pa.Cmwlth. 2000), *petition for allowance of appeal denied*, 565 Pa. 651, 771 A.2d 1288 (2001).

The record reflects that on or about May 2, 1998, Claimant testified that he informed Ms. Sweeney that he would be out from work because he needed to see his doctor. On May 4, 1998, Dr. Gringeri treated Claimant and provided him with a note restricting him from returning to work.[8] Thereafter, Claimant testified that he intended to give the note to his superiors at a meeting on May 6, 1998. (R.R. at 45a). However, Claimant was terminated on that date. Moreover, Dr. Ivill opined within a reasonable degree of medical certainty that Claimant's injuries were directly related to the injury he sustained on October 1, 1997.[9] (R.R. at 96a). Thus, Claimant established a new period of disability through his testimony and that of Dr. Ivill's, which the WCJ accepted as credible. Hence, the question now becomes whether Claimant is entitled to benefits for this new period of disability.

In this regard, Ms. DaShiell testified that Claimant was discharged due to the events which occurred on March 23, 1998, and April 29, 1998. Specifically, the fact that Claimant left work before his replacement showed up and the allegation that Claimant sat down and watched television while ignoring his job responsibilities, respectively. (R.R. at 316a).

With respect to the incident on March 23, 1998, Claimant testified that he was

---

**7.** As a general rule, where a work-related disability is established, a post-injury involuntary discharge should be considered in connection with the separate determination of job availability rather than as dispositive of loss of earnings capacity. *Stevens*, 563 Pa. at 310, 760 A.2d at 376–377, *citing*, *Vista International*, 560 Pa. at 22, 742 A.2d at 657.

**8.** The note provided, "[o]ur patient Gary Gurski is unable to work as of 5/4/98 and will be

out until further notice due to herniated disc, as [patient] may need surgery or further spinal care." (R.R. at 274a).

**9.** We note that Dr. Ivill offered this diagnosis after examining Claimant on June 10, 1998, just over one month from the date he was restricted from returning to work by Dr. Gringeri.

scheduled to work half of a regular eight-hour shift until 3:00 a.m. Additionally, Claimant testified that after his replacement did not show up, he waited until approximately five to ten minutes after the end of his shift but later left because he needed to go home to attend to his family responsibilities. (R.R. at 29a–34a). Ms. Sweeney testified that Claimant's replacement was not disciplined for failing to report to work for her scheduled shift. (R.R. at 333a–335a). Moreover, Ms. Kramer testified that there was no written policy regarding the proper protocol of an employee whose replacement fails to report to work. Furthermore, Ms. Kramer conceded that the employee handbook provided that an employee's action "depends on the situation." (R.R. at 239a).

As for the incident on April 29, 1998, Claimant testified that he was not in the living room watching television but was instead discussing a patient with Ms. Cloud. Claimant admitted that the television was on at the time. (R.R. at 38a). Additionally, Ms. Kramer testified that, although she considered the allegations of that night to be a serious offense, she conducted no investigation into the matter. (R.R. at 228a–229a).

Although the facts of this case are numerous and complicated, having reviewed the evidence in its entirety, we conclude that the Board properly affirmed the WCJ's determination that Employer failed to meet its burden of proving that Claimant was discharged for work-related misconduct. We emphasize the WCJ's statement in this regard, i.e., "[t]he reasons for Employer's termination of the Claimant are found to be not credible." (WCJ's Finding of Fact No. 31, WCJ's Decision at 9). Therefore, we must affirm the WCJ's award of total disability benefits from the period of November 5, 1997, through November 10, 1997. Additionally, we affirm

the award of temporary total disability benefits for the period beginning on May 3, 1998, ongoing.

■■■ Turning now to Employer's remaining argument, Employer argues that the Board erred in affirming the WCJ's decision awarding Claimant attorney fees based on an unreasonable contest. Specifically, Employer asserts that the WCJ erred in basing his determination upon the assertion that Employer did not have a reasonable basis for the contest until Dr. Frankel's testimony on January 19, 1999. We disagree.

■■■ Section 440(a) of the Pennsylvania Worker's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 996(a), provides that a successful claimant shall receive attorney's fees when the employer contested liability in whole or in part. However, this Section further provides that said attorney fees may be excluded when a reasonable basis for the contest has been established. Whether an employer's contest is reasonable is a question of law fully reviewable by this Court. *White v. Workmen's Compensation Appeal Board (Gateway Coal Co.),* 103 Pa. Cmwlth.397, 520 A.2d 555 (1987). Furthermore, in determining the reasonableness of an employer's contest, the primary question is whether or not the contest was brought to resolve a genuinely disputed issue or merely for purposes of harassment. *Id.*

Here, it is evident from the record that Employer was aware of Claimant's back injury and subsequent restrictions before Claimant's termination. As stated above, Ms. Kramer testified that she completed a disability form providing that Claimant was disabled from work for one week in November of 1997, and that upon Claimant's return to work, he was restricted from lifting. Moreover, Ms. Kramer testified that a physical examination conducted

by Employer's physician in February of 1998, provided that Claimant was restricted from bending and lifting. (R.R. at 206a–211a). Finally, Ms. Sweeney was informed by Claimant that he would be absent from work after May 2, 1998, until he treated with his doctor due to his increased back pain. Based on these facts alone, we believe that Employer did not have a reasonable basis to contest Claimant's claim petition. Thus, we hold that the WCJ's award of attorney fees was appropriate.

Accordingly, the order of the Board is hereby affirmed.

### ORDER

AND NOW, this 16th day of May, 2002, the order of the Workers' Compensation Appeal Board is hereby affirmed.