**Robert SAUER, by his personal representative, Lisa A. SAUER, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (VERIZON PENNSYLVANIA, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 23, 2010.

Decided June 15, 2011.

Publication Ordered Aug. 26, 2011.

Paul B. Himmel, Philadelphia, for petitioner.

Zachary M. Rubinich, Philadelphia, for respondent Verizon Pennsylvania, Inc.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

Robert Sauer (Claimant), by his personal representative, Lisa A. Sauer, petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying Claimant's requests to reinstate his total disability benefits and to expand the description of his work injury.[1] In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ). For the reasons that follow, we affirm.

---

1. Claimant died from causes unrelated to his work injury during the course of the litigation, before the WCJ issued his decision.

Claimant was employed by Verizon Pennsylvania, Inc. (Employer) as a cable splicing technician. On November 20, 2001, Claimant sustained a work-related injury to his neck and right shoulder. Employer issued a Notice of Compensation Payable (NCP) that described the injury as herniated cervical discs at C4–5 and C5–6 and a right shoulder strain and stated that Employer was paying total disability benefits.[2] On August 16, 2007, Claimant returned to modified-duty work with no wage loss, and Employer suspended his benefits by issuing a Notification of Suspension.[3] Claimant did not challenge the Notification of Suspension.[4] The next day, on August 17, 2007, Employer terminated Claimant's employment.

In October 2007, Claimant filed a petition seeking a reinstatement of his total disability benefits as of August 17, 2007. Claimant alleged that he was entitled to benefits because he was terminated through no fault of his own. Then, in December 2007, Claimant filed a review petition to expand the description of his work injury to include depression, right shoulder rotator cuff tear, radiculopathy and carpal tunnel syndrome. Employer answered both petitions, denying the alle-gations.[5] The petitions were consolidated by the WCJ.

In support of his petitions, Claimant testified by deposition. Claimant described various shoulder, neck and right carpal tunnel surgeries he underwent after sustaining the work injury. Claimant also began treating with psychologist Barry L. Kayes, Ed. D., in June 2006 for depression.

Claimant acknowledged telling Dr. Kayes that his "physical activities were severely limited." Reproduced Record at 46a (R.R. ——). Claimant also acknowledged telling Dr. Kayes in 2007 that he wanted to start a home repair business, but he denied doing so, stating that he was not physically capable. Claimant stated that, instead, he helped a friend start a business. With respect to Employer's surveillance of his activities in June 2007, Claimant acknowledged that he was photographed carrying boxes, attempting to start a weed whacker and taking items to an E–Bay store. Claimant denied that he received any income from these activities and explained that he was merely helping other people. Claimant acknowledged that he provided Employer with documents in July 2007 attesting that he had no employ-

---

**2.** Employer changed Claimant's status from total to partial disability as of October 26, 2004, based on the results of an impairment rating evaluation. Claimant did not challenge the impairment rating.

**3.** According to Claimant, he had also returned to work in 2005 for six months, but he had to leave because his modified-duty job turned into full duty that he could not perform.

**4.** As such, the Notification has the same force and effect as a supplemental agreement pursuant to Section 413(c)(2) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 774.2(2). It states:

If the employe does not challenge the insurer's notification of suspension within twen-ty days under paragraph (1), the employe shall be deemed to have admitted to the return to work and receipt of wages at prior or increased earnings. The insurer's notification of suspension shall be deemed to have the same binding effect as a fully executed supplemental agreement for the suspension of benefits.

77 P.S. § 774.2(2). Section 413(c) was added by the Act of July 1, 1978, P.L. 692.

**5.** Claimant also filed a claim petition for disfigurement from a surgical scar, and a penalty petition. The claim petition was ultimately withdrawn and the penalty petition was dismissed as moot. These petitions are not at issue on appeal.

ment and no income other than his workers' compensation benefits.

Claimant attended an independent medical examination (IME) and was released to return to work in August 2007. Claimant testified that he told the IME doctor he wanted to go back to work, even though he experienced painful days on occasion. Claimant returned to a modified-duty job on August 16, 2007.

On August 17, 2007, Claimant and a union representative attended a meeting with management. At the meeting, Employer explained that, based on surveillance photos, it concluded that Claimant had misrepresented his physical limitations, which violated Employer's code of business conduct. Claimant was fired and escorted from the building. Claimant testified that he has not worked in any capacity after August 17, 2007.

Claimant submitted the deposition testimony of Gene Z. Salkind, M.D., a board certified neurosurgeon who began treating Claimant in May 2002. Dr. Salkind discussed Claimant's medical history, including his numerous surgeries. Dr. Salkind diagnosed Claimant with C4–5 and C5–6 disc herniations; exacerbation of pre-existing cervical degenerative disc disease; cervical radiculopathy; right rotator cuff tear and chronic pain syndrome, and opined that all of those conditions were causally related to the work injury. Dr. Salkind also diagnosed right carpal tunnel syndrome caused by Claimant's repetitive work duties.

Dr. Salkind testified that after his injury, Claimant was unable to perform his regular job. However, Dr. Salkind allowed Claimant to perform sedentary or light work on a full-time basis. Dr. Salkind recommended that Claimant undergo a functional capacities evaluation in 2005, but it never occurred. For this reason, Dr. Salkind could not be more specific

regarding Claimant's capabilities, stating "I haven't specifically delved into what activities he can and can't do, but he tells me that he, to this day, has good days and bad days." R.R. 264a. With regard to Claimant's daily functioning, Dr. Salkind stated that "[a]ll I have to go by is what the patient tells me on that. He believes that his activities of daily [living] have been hindered." R.R. 263a. Dr. Salkind was aware that Claimant had been placed under surveillance, but he did not review the surveillance evidence.

Claimant also submitted the deposition testimony of Dr. Kayes, the licensed psychologist who began treating Claimant on June 7, 2006. Dr. Kayes diagnosed Claimant with: (1) a pain disorder associated with both psychological factors and his physical work injuries; and (2) an adjustment disorder with mixed anxiety and depressed mood. Dr. Kayes opined that Claimant's diagnoses were causally related to his work-related injury and his inability to function well after the injury. Dr. Kayes acknowledged that Claimant had conflicts with the mother of his child, but he discounted those stressors as the cause of Claimant's psychological problems.

Employer presented the deposition testimony of Miles Ladenheim, M.D., a board certified psychiatrist who performed an independent psychological evaluation of Claimant on May 14, 2008. Dr. Ladenheim diagnosed Claimant with an adjustment disorder with mixed anxiety and depression that was not disabling and was not caused by the work injury or pain.

Employer submitted into evidence Bureau forms completed by Claimant in July 2007. In these forms, Claimant stated that he had no wages from any source and that he was not, nor had he been, self-employed while collecting workers' compensation benefits.

Employer also submitted surveillance reports and photographs from Capcon Group, LLC, a company hired by Employer to investigate Claimant's activities. Surveillance was conducted over three days in June 2007. Claimant was observed doing pool and lawn maintenance, assembling a gazebo, and carrying and hauling numerous items including boxes. Surveillance was again conducted over several days in August 2008. At that time, Claimant was observed visiting private residences and performing activities consistent with a home repair business. The surveillance also documented that Claimant's van had a sign on the rear doors advertising "Worker Bee Home Improvement." R.R. 442a.

The WCJ credited the testimony of Dr. Ladenheim over that of Dr. Kayes, citing, *inter alia,* the former's superior credentials. The WCJ credited Claimant's testimony only as to his past medical history and the nature of his disputes over custody of his child. The WCJ rejected Claimant's testimony about the cause or extent of any depression or anxiety as well as his explanation of the activities documented in the surveillance. The WCJ found that Claimant performed activities that exceeded his alleged limitations and that Claimant was self-employed in a home improvement business.

Based on his credibility determinations, the WCJ found that Claimant's work injury did not include mixed adjustment disorder with depression and anxiety and denied Claimant's review petition. The WCJ further found that Claimant was terminated on August 17, 2007, because of his conduct, making his subsequent loss of earnings attributable to his fault, not his work injury. The WCJ noted that Claimant never contested his discharge, even though he had union representation present when he was fired. Because Claimant's earning power was not adversely affected by his work injury as of August 17, 2007, the WCJ denied the reinstatement petition. By the time the WCJ issued his decision, Claimant had died.

Claimant's personal representative appealed, and the Board affirmed. Claimant's representative then petitioned for this Court's review.[6]

This appeal presents two issues. First, Claimant's representative argues that the WCJ and the Board erred in denying the reinstatement petition on the basis that Claimant's loss of earnings was caused by Claimant's misconduct.[7] Second, Claimant's representative argues that in denying the review petition, the WCJ failed to consider Claimant's uncontradicted evidence that the NCP did not list all of Claimant's physical injuries.[8]

■ On the first issue, Claimant's representative argues that benefits should have been reinstated because Claimant's loss of earnings was due to his work injury, not his misconduct. Because Claimant never returned to his pre-injury job, he is entitled to a presumption of ongoing disability. Further, Dr. Salkind, the only physician to render an opinion concerning

---

6. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown),* 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

7. We have reversed the order of the arguments.

8. Claimant's representative does not challenge the WCJ's finding that Claimant's work injury did not include a psychological component.

disability, opined that Claimant could not perform his pre-injury job and that he would need work restrictions. The WCJ, however, failed to make a credibility finding with respect to Dr. Salkind's testimony. Instead, the WCJ relied on the surveillance evidence, which did not show Claimant performing the type of strenuous activities required in his pre-injury job. In fact, Claimant's representative argues that the surveillance is not particularly critical because it only covered a few hours over the span of several days. Had the WCJ considered Dr. Salkind's testimony about Claimant's limitations, the WCJ would have understood that the surveillance did not show Claimant performing tasks beyond Dr. Salkind's restrictions.

■ A claimant whose benefits are suspended upon a return to a light-duty job is ordinarily entitled to a reinstatement of benefits if he is subsequently separated from his employment. *Kane v. Workmen's Compensation Appeal Board (Weis Markets, Inc.),* 682 A.2d 17, 20 (Pa. Cmwlth.1996). However, reinstatement will be denied if the employer can demonstrate that employment is available within the claimant's restrictions or "would have been available but for the circumstances which merit allocation of the consequences of the discharge to the claimant, such as the claimant's lack of good faith." *Second Breath v. Workers' Compensation Appeal Board (Gurski),* 799 A.2d 892, 900 (Pa. Cmwlth.2002) (footnote omitted) (citing *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels),* 560 Pa. 12, 29, 742 A.2d 649, 658 (1999)). Whether the claimant was discharged for conduct evidencing a lack of good faith is a question for the WCJ, as fact finder, to determine. *Second Breath,* 799 A.2d at 900.

It is true that Claimant never returned to his pre-injury job, but only to modified-duty. A claimant is entitled to a reinstatement upon his discharge, but only where the discharge is not based upon the conduct of the claimant. The surveillance evidence showed Claimant to be performing activities well beyond his asserted "severe limitations" and to be running a home improvement business. The WCJ, as fact finder, chose to credit the surveillance and to reject Claimant's explanation of what the surveillance showed. This Court may not disturb the WCJ's credibility findings. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.),* 666 A.2d 383, 385 (Pa.Cmwlth.1995). The argument that the surveillance only covered a limited period of time is an attack on the weight to be given the evidence; again, this is a matter entrusted to the WCJ. *Saville v. Workers' Compensation Appeal Board (Pathmark Stores, Inc.),* 756 A.2d 1214, 1217 (Pa.Cmwlth.2000).

Claimant's emphasis on Dr. Salkind's testimony is misplaced. Dr. Salkind never saw the surveillance evidence and could not comment on it. Dr. Salkind also admitted that he did not really know what Claimant could do and that his opinion of disability was based exclusively on Claimant's subjective report of his own capabilities. Therefore, the WCJ did not err in failing to discuss his testimony when deciding the reinstatement.

Claimant's representative contends that because Employer failed to prove that Claimant was aware of its "code of business conduct," it did not prove misconduct. A claimant need not be aware of a work rule in order to have a discharge be considered his responsibility. Claimant was dismissed because he told the Bureau, Employer and medical professionals that he did not work and could not work because of his physical limitations. Lying about matters material to one's compensation eligibility does not require a specific work

rule before a WCJ can find, as fact, that a discharge was the result of misconduct.

Alternatively, Claimant's representative contends that Claimant's conduct did not rise to the level of misconduct that is needed to deny benefits. In support, Claimant's representative points to, *inter alia, Edwards v. Workers' Compensation Appeal Board (Sear's Logistic Services),* 770 A.2d 805 (Pa.Cmwlth.2001), where the claimant's benefits were suspended because he was terminated for failing a drug test, and *St. Luke's Hospital v. Workers' Compensation Appeal Board (Ingle),* 823 A.2d 277 (Pa.Cmwlth.2003), where reinstatement was denied because the claimant was fired from a modified-duty position because of criminal charges of child abuse.[9] These cases do not set a floor to misconduct; they simply provide other examples of misconduct.

An employer is required to pay total disability benefits until it can provide the claimant a job within his capabilities or establish that there is work in the job market that he can perform. Not being candid but, rather, misrepresenting what a claimant can do will lead an employer to pay total disability benefits to which the claimant is not entitled. It is a serious breach of trust. In short, because Employer proved that Claimant misrepresented his abilities and the facts around his self-employment, he was not entitled to a reinstatement of benefits.

In the second issue, Claimant's representative argues that the WCJ erred in denying the review petition without making adequate findings about the extent of his injuries. Claimant's representative asserts that he sustained more work-related physical injuries than the "herniated disc

at C4–5 & C5–6 (cervical spine) and right shoulder strain" listed on the NCP. R.R. 28a. In support, Claimant points to Dr. Salkind's unrebutted testimony that the work-related injuries included an exacerbation of cervical degenerative disc disease; chronic pain syndrome; cervical radiculopathy; right shoulder rotator cuff tear and right carpal tunnel syndrome. Claimant's representative argues that this disregard of Dr. Salkind's testimony warrants, at a minimum, a remand for the WCJ to make further findings.

In the review petition, Claimant alleged that the description of his injury "should be amended to include depression, right shoulder rotator cuff tear, and radiculopathy and carpal tunnel syndrome." R.R. 24a. The WCJ described Claimant's review petition as "alleging that his work-related injuries should be amended to include adjustment disorder with mixed anxiety and depression." WCJ Decision, August 13, 2009, at 1; Procedural Record Section. The WCJ made credibility findings with respect to Dr. Kayes' and Dr. Ladenheim, who testified as to Claimant's psychological condition, and denied the review petition after finding that the work injury did not include adjustment disorder with depression and anxiety.

It appears that the WCJ misunderstood the scope of Claimant's review petition. Claimant sought to add physical injuries to the description of his work injury, as well as psychological injuries. The WCJ erred, then, in not making findings about whether the physical conditions described by Dr. Salkind were part of Claimant's work injury to be added to the NCP.

**9.** Claimant's representative also points to *Second Breath,* 799 A.2d 892, where the claimant was granted benefits despite the fact that he had been terminated because he left work before his replacement arrived to relieve him. That case is inapplicable because there the employer's reason for firing the claimant was found not credible.

When a WCJ fails to dispose of all issues, this Court remands the matter for further proceedings. However, Claimant, whose benefits were in suspension status, died before the WCJ rendered his decision. The reinstatement petition was denied because the loss of earnings as of August 17, 2007, was due to Claimant's discharge for fault. The suspension remained in place. Claimant's personal representative has not explained why the decision on the review petition is still being appealed. It is not asserted that there were any outstanding unpaid medical bills for Claimant's work-related injury that would be owed under the suspension notice. Given these circumstances, the review petition has become moot and no remand is necessary.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 15th day of June, 2011, the order of the Workers' Compensation Appeal Board dated June 9, 2010, in the above captioned matter is hereby AFFIRMED.