IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Koway,                          :
                                        :
                    Petitioner          :
                                        :
        v.                              : No. 216 C.D. 2019
                                        : Submitted: May 24, 2019
Workers' Compensation Appeal            :
Board (MV Transportation),              :
                                        :
                    Respondent          :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                            FILED:  September 25, 2019


        Richard Koway (Claimant) petitions for review of the January 29, 2019 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) denying his reinstatement petition.  We affirm.

        Claimant sustained a work-related injury on May 29, 2012.  On January 22, 2013, MV Transportation (Employer) issued a notice of temporary compensation payable, which converted to a notice of compensation payable (NCP), acknowledging an injury to Claimant's right foot and right shoulder.  Claimant's indemnity benefits were suspended based on his July 29, 2013 return to work with no wage loss.

        On July 27, 2017, Claimant filed a reinstatement petition alleging that as of July 19, 2017, his condition worsened, and he suffered a decrease in his

earning power as a result of the injury.[1]  Employer denied the allegations and the matter was assigned to the WCJ.

In support of his reinstatement petition, Claimant testified before the WCJ on August 23, 2017, and November 15, 2017.  Claimant stated that before his injury, he worked in maintenance, which involved repairing vehicles, engines, and transmissions, and lifting heavy items, such as tire rims that weighed over 80 pounds.  Reproduced Record (R.R.) at 14a.  Claimant said that he sustained an injury on May 29, 2012, when he slipped on oil, jerked his body, slammed his left foot down, and twisted his back and neck.  R.R. at 15a.  Claimant said that he went to Employer's doctors for treatment; he started physical therapy, found a torn tendon in his left foot, and underwent surgery for his right shoulder.  He was out of work for approximately six months following surgery and subsequently returned to work in a light-duty position.  R.R. at 16a-18a.  After six months of light duty, Claimant was transferred to a maintenance supervisor position, which he held for one year before being transferred to work as a utility supervisor.  R.R. at 19a-20a.

Claimant testified that he began treating with a Dr. Glaser in November 2016.  Dr. Glaser sent him to therapy and eventually recommended shoulder replacement surgery.  Upon receiving this recommendation, Claimant retained an attorney.  Claimant testified that on June 21, 2017, he told his workers' compensation caseworker that he had hired an attorney, and he was fired that same night.  R.R. at 21a-24a.

Claimant acknowledged that Employer cited insubordination and complaints against him as reasons for his discharge.  He testified that James Pate,

---

[1] Claimant subsequently amended the reinstatement date to either June 21, 2017, the date of his discharge, or July 3, 2017, the date his medical provider said he could not return to work.

2

his supervisor,[2] and Dean Carbanaro, another supervisor, met with him and told him to perform his duties in a different manner. Claimant stated that he felt physically capable of doing his supervisory job according to Mr. Pate's and Mr. Carbanaro's instructions, as long as he had adequate personnel. However, Claimant asserted that he did not comply with their directives because he had an insufficient number of motivated or qualified employees. Claimant explained that he continued to perform his duties in the usual manner because he believed that he could not do the job properly if he followed the new directives and he would have to stay late to finish his work. Claimant admitted that he fueled, ran, and cleaned buses, despite being specifically directed not to do so. R.R. at 25a-27a, 171a, 173a, 181a, 186a.

At the time of his discharge, Claimant was working in a light-duty position. Claimant testified that he had never been released to full-duty, he never felt fully recovered, and he believed he could not perform his full-duty, pre-injury position. Claimant stated that he has not worked since his discharge on June 21, 2017, and that he continues to receive therapy for his work injury. R.R. at 24a, 27a, 30a-31a.

Claimant also submitted the deposition testimony of Michael J. Attanasio, D.O., who is board-certified in family practice. Dr. Attanasio testified that he examined Claimant twice, on July 3, 2017, and August 29, 2017, regarding Claimant's complaints of neck pain, right shoulder pain, and left foot and ankle pain. Dr. Attanasio performed a physical examination of Claimant, reviewed

---

[2] Throughout Claimant's testimony, he and his counsel referred to his supervisor as James Pappa, or "Mr. Pappa," however, it is clear from the record that they are referring to James Pate.

previous medical records, MRIs, orthopedic evaluations, and physical therapy notes. Dr. Attanasio acknowledged that he had not reviewed any diagnostic studies of Claimant's left ankle. Based on his review, Dr. Attanasio noted that there was no re-tear in Claimant's shoulder, but he found tendinosis of multiple tendons within the rotator cuff, a partial tear in the subscapularis tendon, a decrease in shoulder range of motion, chronic pain, and inflammation. R.R. at 50a-51a, 54a-58a, 61a, 75a.

Dr. Attanasio opined, within a reasonable degree of medical certainty, that Claimant's pain and loss of range of motion was not corrected by his shoulder surgery, that there was no re-tear of his tendon but a different tendon had a small tear, that there was right posterior tendinopathy of the ankle and cervical bulging disk with foraminal encroachment in his neck, and that Claimant had continued pain in his foot, ankle, shoulder, and neck areas. He testified that Claimant could not perform any physical job requiring the use of his upper extremities, adding that he also believed a sedentary job would be hard for Claimant in light of his continued pain and discomfort. Dr. Attanasio said he disagreed with the opinion of Mario Arena, M.D., that Claimant could return to work with restrictions. Rather, Dr. Attanasio believed that Claimant had not fully recovered from the work injury. R.R. at 62a-65a, 69a-70a, 73a.

Employer presented the testimony of maintenance manager James Pate on October 25, 2017. He explained that Employer had a contract with Southeastern Pennsylvania Transportation Authority (SEPTA) for the provision of transportation services under which Employer provided cleaning and maintenance services to SEPTA's buses. The contract permitted SEPTA to assess liquidated damages if Employer did not perform services as required. Mr. Pate testified that

4

he supervised Claimant throughout his employment. Mr. Pate explained that Claimant was off work from January 2013 to July 2013; upon returning, Claimant worked in a modified mechanic position, which involved no heavy lifting and allowed him to seek assistance from other employees. In 2014, Mr. Pate transferred Claimant to a maintenance supervisor position, which involved scheduling and supervisory duties, to protect him from further injury. R.R. at 121a.

In 2016, Claimant transferred to a utility supervisor position. In this position, Claimant's duties originally included fueling and cleaning vehicles, scheduling and covering staff, and installing or repairing drive cams and mobilizers for safety. Mr. Pate testified that Claimant complained that there was too much work, and Claimant's work duties were subsequently limited to supervising his crew. Mr. Pate said that Claimant's supervisory responsibilities were light duty in comparison to the physical requirements of his pre-injury maintenance job.

Mr. Pate stated that when SEPTA changed its expectations under the contract, he and Mr. Carbanaro developed a plan for cleaning and fueling the buses that Claimant was to implement with his crew. In May 2017, they met with Claimant for two hours to review the plan, which required Claimant to ensure adequate staffing and to stand outside, observe, and direct the crew. However, Mr. Pate testified that as soon as he and Mr. Carbanaro left, Claimant refused to adhere to the plan. Because Claimant's crew was not cleaning to SEPTA's satisfaction, SEPTA assessed liquidated damages against Employer. Mr. Pate testified that he suspended Claimant on May 31, 2017, due to his insubordination.

5

Mr. Pate said he was not aware that Claimant contacted an attorney. He explained that after he and Mr. Carbanaro spoke with Claimant, and despite Claimant's suspension on May 31, 2017, Claimant continued to refuse their directives. Mr. Pate testified that Claimant was disciplined at least 14 times, and was given verbal and written warnings both before and after his injury. Additionally, he stated that Claimant's crew provided written reports reflecting that Claimant refused to follow the plan. Mr. Pate testified that on June 21, 2017, six weeks after meeting with Claimant to discuss the need for adequate staffing and other specific responsibilities, he issued Claimant an Employee Coaching and Counseling form that terminated Claimant's employment due to "insubordination, failure to follow directives, [and] failure to supervise . . . ." R.R. at 127a-28a, 130a.

Employer also submitted the deposition testimony of Dr. Arena, who is board-certified in orthopedic surgery. Dr. Arena first examined Claimant on June 7, 2017, at which time he took a history from Claimant, conducted a physical examination of Claimant's shoulder, performed a neurologic examination of Claimant's cervical spine, and reviewed multiple MRIs. Dr. Arena stated that although he found limited motion in Claimant's right shoulder, with some tenderness and mild impingement, his neurologic examination of Claimant showed full strength. Dr. Arena testified that he reviewed multiple MRIs and saw no significant changes from 2012 except for the surgical repair of one tendon tear. He believed that any changes in Claimant's cervical spine were degenerative in nature and not causally related to Claimant's May 29, 2012 work injury. Nevertheless, he placed restrictions on Claimant, including occasional lifting up to 25 pounds and frequent lifting up to 10 pounds. R.R. at 205a-12a, 225a.

6

Dr. Arena said that during his second examination of Claimant, on October 2, 2017, the symptoms in his right shoulder remained unchanged, but Claimant complained of soreness and occasional shooting pain in his ankles and feet. Dr. Arena stated that upon physical examination, Claimant's shoulder was the same, his neck was the same, and his ankles showed full range of motion bilaterally despite subjective tenderness. Dr. Arena testified that he found no evidence to support any work restrictions regarding Claimant's cervical spine, ankles, or feet. He acknowledged that Claimant had no prior right shoulder or cervical injuries before the injury and that his review of the records revealed Claimant continued to experience symptoms since the May 29, 2012 work injury occurred. Dr. Arena concluded that Claimant was not fully recovered from his right shoulder injury. Nevertheless, Dr. Arena said he would not recommend a shoulder replacement; instead, he would prescribe independent exercises and some anti-inflammatory medication as needed. He testified that Claimant was capable of performing his full duties as a supervisor. R.R. at 214a-19a, 221a, 227a.

By decision dated February 13, 2018, the WCJ found Claimant credible only as to the occurrence of the work injury. Findings of Fact (F.F.) No. 2. She found Mr. Pate to be more credible than Claimant as to the circumstances surrounding Claimant's discharge, citing Mr. Pate's demeanor and Claimant's admission that he disregarded Mr. Pate's explicit directives. *Id.* She also found Dr. Arena more credible and persuasive than Dr. Attanasio, stating that Dr. Arena

was better credentialed and evaluated Claimant more comprehensively, and noting that Claimant's testimony did not support Dr. Attanasio's testimony.[3] *Id.*

Relying on Mr. Pate's credible testimony, the WCJ found that Claimant's May 29, 2012 work injury prevented his return to his pre-injury job, and that he had a loss of earning capacity as a result of that work injury. However, she found that Claimant returned to work on July 29, 2013, at wages equal to or greater than his time-of-injury wages. F.F. No. 3. The WCJ further found that work within Claimant's restrictions would have been available on and after June 21, 2017, with no loss of wages, but for Claimant's discharge due to insubordination, specifically, his refusal to perform his duties as directed. F.F. Nos. 16, 40. Referencing Mr. Pate's testimony, the WCJ concluded that the evidence did not establish that Claimant's earning power was adversely affected by the work injury, and through no fault of his own, as of June 21, 2017. F.F. No. 41. Therefore, the WCJ denied Claimant's reinstatement petition, and the Board affirmed the WCJ's decision.

On appeal to this Court,[4] Claimant argues that the WCJ's decision is not supported by substantial evidence. More specifically, Claimant contends that the WCJ erred in finding a lack of good faith on Claimant's part and in failing to find that Claimant's condition had worsened.

---

[3] The WCJ amended the NCP by adding "left ankle pain, stable repair right shoulder rotator cuff with no evidence of re-tear and with mild residual rotator cuff tendonitis" to Claimant's work injuries. R.R. at 283a.

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the WCJ's findings of fact are supported by substantial evidence. *Dougherty v. Workers' Compensation Appeal Board (QVC Inc.)*, 102 A.3d 591, 594 n.4 (Pa. Cmwlth. 2014).

Initially, we note that Section 413(a) of the Workers' Compensation Act (Act)[5] provides in part as follows:

> A workers' compensation judge . . . may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed . . . . [W]here compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury[,] . . . payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, *unless it be shown that the loss in earnings does not result from the disability due to the injury*.

77 P.S. §772 (emphasis added).

A claimant seeking reinstatement following a suspension of benefits must prove that (1) through no fault of his own, his disability is again adversely affected by the work-related injury, and (2) the disability that gave rise to the original claim continues. *Pieper v. Ametek-Thermox Instruments Division*, 584 A.2d 301, 304-05 (Pa. 1990). In such cases, the causal connection between the original work-related injury and the disability that gave rise to compensation is presumed. *Id.* Once the claimant meets this burden, the burden shifts to the

---

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §772.

9

employer to prove that the claimant's disability[6] is due to a cause other than the work-related injury. *Id.*

In *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 742 A.2d 649, 657-58 (Pa. 1999), our Supreme Court explained that, in determining whether a partially disabled employee is entitled to total disability benefits upon the termination of a light-duty job, the factfinder must consider the claimant's good faith and bad faith in connection with the termination. If the employer has provided work within the claimant's physical limitations at no loss of pay and establishes that the claimant was discharged for conduct evidencing bad faith or a lack of good faith, the claimant is not entitled to a reinstatement of benefits. *Sauer v. Workers' Compensation Appeal Board (Verizon Pennsylvania, Inc.)*, 26 A.3d 531, 533, 535-38 (Pa. Cmwlth. 2011). An employer can establish a lack of good faith, or bad faith, when the employer proves that it discharged the claimant for misconduct. *Id.* at 536. Whether a claimant was discharged for conduct evidencing bad faith is a factual determination for the WCJ. *Champion v. Workers' Compensation Appeal Board (Glasgow, Inc.)*, 753 A.2d 337 (Pa. Cmwlth. 2000).

Claimant first argues that the WCJ's finding that his discharge was the result of bad faith was not based on substantial evidence. However, Claimant relies on his own testimony to support this argument, and the WCJ rejected his testimony as not credible. F.F. No. 2. Instead, the WCJ credited Mr. Pate's testimony, which demonstrated that Claimant was discharged for insubordination,

---

[6] In the context of workers' compensation law, the term "disability" means loss of earning power. *Howze v. Workers' Compensation Appeal Board (General Electric Co.)*, 714 A.2d 1140, 1142 (Pa. Cmwlth. 1998).

failure to follow directives, and failure to supervise. Additionally, Mr. Pate's testimony established that while Employer provided light-duty positions to accommodate Claimant's restrictions, Claimant refused to perform his duties as instructed.

It is a fundamental tenet of workers' compensation law that the WCJ is the exclusive arbiter of witness credibility and evidentiary weight. *Lindemuth v. Workers' Compensation Appeal Board (Strishock Coal Co.)*, 134 A.3d 111, 125 (Pa. Cmwlth. 2016). The WCJ is free to accept or reject, in whole or in part, any evidence, including medical testimony. *Id.* The WCJ's determinations will not be disturbed on appeal if supported by substantial evidence.[7] *Verity v. Workers' Compensation Appeal Board (The Malvern School)*, 38 A.3d 936, 940 n.7 (Pa. Cmwlth. 2011). It is irrelevant whether there is evidence to support a different conclusion. *Verizon Pa. Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). Rather, the inquiry focuses on whether there is evidence supporting the WCJ's findings made. *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53, 60 (Pa. Cmwlth. 2014). In this instance, Mr. Pate's credible testimony is substantial evidence to support the WCJ's finding that Claimant's disability was not due to his work injury, but due to Claimant's lack of good faith, i.e., his admitted refusal to carry out his work responsibilities as directed.

Claimant also argues that the WCJ erred in finding his condition had not worsened. However, the WCJ rejected Dr. Attanasio's testimony in this regard

---

[7] Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a finding. *Wells-Moore v. Workmen's Compensation Appeal Board (McNeil Consumer Products Co.)*, 601 A.2d 879, 881 (Pa. Cmwlth. 1992).

11

and credited Claimant's testimony only to establish that he suffered a work injury. Consequently, Claimant failed to present credible evidence demonstrating that his condition had worsened. Having determined that the WCJ's decision is supported by substantial evidence, we conclude that the WCJ did not err in denying Claimant's reinstatement petition, and the Board properly affirmed the WCJ's decision.

Accordingly, we affirm.


_____
MICHAEL H. WOJCIK, Judge


Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Koway,                           :
                                         :
                    Petitioner           :
                                         :
          v.                             :   No. 216 C.D. 2019
                                         :
Workers' Compensation Appeal             :
Board (MV Transportation),               :
                                         :
                    Respondent           :


# O R D E R


AND NOW, this 25th day of September, 2019, the order of the
Workers' Compensation Appeal Board, dated January 29, 2019, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge