**Inez M. GREEN, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (ASSOCIATION FOR RETARDED CITIZENS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 1, 1995.

Decided Feb. 1, 1996.

---

Robert S. Waldman, for Petitioner.

Francine T. Lincicome, for Respondent.

Before DOYLE and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

Inez M. Green (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (WCAB), affirming a decision of the referee [1] which dismissed both Claimant's Claim and Penalty Petitions. We affirm.

On December 31, 1990, Claimant filed a Claim Petition, alleging that she was entitled to payment for dental bills incurred as a result of a work-related injury she sustained on September 1, 1989.[2] Claimant also filed a Penalty Petition seeking interest, costs and attorney's fees on the outstanding dental bills.[3] Employer denied Claimant's allegations, and a hearing was held before the referee.

In support of her Claim Petition, Claimant presented the deposition testimony of Dr. Richard De Forno, a dentist. Dr. De Forno first saw Claimant on May 14, 1990, at which time a dental examination revealed tooth decay and cavities. Claimant was missing approximately twenty of her permanent teeth and had only twelve teeth remaining. Claimant's lower front teeth had also shifted laterally to the right. Dr. De Forno diagnosed Claimant as suffering from traumatic

---

1. Referees are now called Workers' Compensation Judges under the new amendments to the Workers' Compensation Act effective August 31, 1993. However, because this case was before the referee prior to the effective date of those amendments, we will refer to the referee as such and not as a Workers' Compensation Judge.

2. Apparently, Claimant sustained the injury in the course and scope of her employment with the Association for Retarded Citizens (Employer) during an altercation in which a patient hit Claimant in the head with a metal chair. (Referee's Findings of Fact, Nos. 1–2.)

As a result of the injury, Claimant received compensation benefits at $199.50 per week for the period from September 1, 1989 through November 1989. Claimant returned to work in November of 1989 and continued working until June 30, 1990, when Employer ceased operation and Claimant was laid off. (Referee's Finding of Fact, No. 3.)

3. According to Claimant's testimony, she submitted dental bills to Employer's insurance company, which the insurance company failed to pay as requested. (R.R. at 36.)

temporomandibular joint disorder (TMJ),[4] opining that the condition was directly attributable to Claimant's earlier work-related injury. (Referee's Findings of Fact, Nos. 5–6.)

In opposition, Employer offered the deposition testimony of another dentist, Dr. Herbert Goldberg. Dr. Goldberg examined Claimant on August 7, 1990, reviewing both Dr. De Forno's records and the x-ray reports and records from the emergency room where Claimant was originally treated following the incident at work. (Referee's Finding of Fact, No. 7.) His examination revealed that Claimant was, indeed, missing most of her teeth; however, she was able to open and close her mouth in a normal manner and to move her jaw laterally within normal limits and without irregularity. (Referee's Finding of Fact, No. 8.) Moreover, the soft muscle tissue of the jaw and cervical areas were normal, and there was no evidence of any pathology which could produce unusual sounds from the jaw joint. (Referee's Finding of Fact, No. 9.) Based on the results of his examination, Dr. Goldberg opined that Claimant did not suffer from TMJ and, therefore, did not need treatment relative to Claimant's temporomandibular joint.[5] (Referee's Finding of Fact, No. 10.)

On July 12, 1993, the referee issued his decision, concluding that Claimant failed to establish by credible and persuasive evidence that she sustained a TMJ injury as a result of her work-related accident of September 1, 1989. Consequently, the referee found that Claimant failed to establish that the bills at issue were necessary, reasonable and causally-related to the September 1, 1989 injury. The referee, thus, dismissed both Claimant's Claim and Penalty Petitions. The WCAB affirmed.

■■■ On appeal,[6] Claimant argues that, where, as here, there is an open notice of compensation payable that has not been terminated or suspended,[7] Employer must continue to pay all reasonable and necessary dental expenses for the treatment of Claimant's TMJ until such time as Employer proves that Claimant's TMJ dysfunction was *not* causally related to her work injury. Accordingly, Claimant argues that the referee erred as a matter of law by placing the burden on Claimant to prove that her TMJ dysfunction was causally connected to her earlier work-related accident. We disagree.

■■■ Claimant first argues that, by filing a notice of compensation payable for a "head injury," Employer essentially admitted that Claimant sustained a TMJ injury because the causal connection between the TMJ treatment and the original injury is clear and obvious.[8] Thus, Employer bears the burden

---

4. TMJ is a "noninfectious degenerative dysfunction of the temporomandibular joint characterized by pain, cracking and limited mandibular opening." STEDMAN'S MEDICAL DICTIONARY 136 (25th ed. 1990).

5. Dr. Goldberg, while doubting that Claimant had ever suffered from TMJ dysfunction at all, stated that, even if Claimant had, in fact, suffered from TMJ prior to his examination of her, it was not causally connected to her work-related accident.

6. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether the necessary findings of fact were supported by substantial evidence. *Universal Trucking, Inc. v. Workmen's Compensation Appeal Board (Hassell)*, 112 Pa.Cmwlth. 428, 535 A.2d 722 (1988).

7. Employer issued a Notice of Compensation Payable on November 20, 1989, accepting liability for a "head injury" resulting from Claimant's accident of September 1, 1989. The record is somewhat unclear with regard to the Notice;

however, as best as we can determine, Claimant received compensation benefits covering the time period from September 1, 1989 through November 1989, although the Notice of Compensation Payable was not issued until November.

Apparently, Employer never obtained either a valid final receipt signed by Claimant or an order suspending or terminating Claimant's compensation benefits upon Claimant's return to work. We note that Employer erred in simply ceasing payment of compensation benefits without first securing a formal release of liability; however, because Claimant returned to work on a full-time basis at her pre-injury wages and, thus, was not entitled to payment of weekly compensation benefits, Employer's error was harmless.

8. Medical testimony is not necessary to establish the requisite causal connection where the claim is for an injury which immediately manifests itself while a claimant is in the act of doing the kind of work which can cause such an injury and the relationship between the work-related accident and the injury, therefore, is obvious. *Hilton Hotel Corp. v. Workmen's Compensation Appeal*

of proving a lack of work-related causation, a burden which, Claimant contends, Employer has not met.

■ It is axiomatic that an employer is only liable for payment of benefits arising out of work-related injuries.[9] This is true of both compensation benefits and the reimbursement of medical expenses. *McDonnell Douglas Truck Services, Inc. v. Workmen's Compensation Appeal Board (Feldman)*, 655 A.2d 655 (Pa.Cmwlth.1995). Obviously, if an injury is not work-related, the employer is not responsible for paying for the medical costs related to that injury, even if the medical treatment is necessary to cure that other injury. *King v. Workmen's Compensation Appeal Board (Wendell Stone Co.)*, 132 Pa. Cmwlth. 292, 572 A.2d 845 (1990), *overruled in part on other grounds by Stonebraker v. Workmen's Compensation Appeal Board (Seven Springs Farm, Inc.)*, 163 Pa.Cmwlth. 468, 641 A.2d 655 (1994).

Here, we note that the nature of the injury, as described on the Notice of Compensation Payable, was merely a "head injury." Contrary to Claimant's argument, we cannot agree that the causal connection between the treatment for TMJ dysfunction and Claim-

ant's "head injury" is obvious; rather, we see no obvious causal connection between Claimant's TMJ dysfunction and the assault she suffered at work.[10] Indeed, it is undisputed that, prior to her work-related accident, Claimant had a long history of poor dental health, including the loss of most of her teeth, lateral shifting of her remaining teeth and difficulty and discomfort in chewing and grinding her food. According to the admission of Claimant's own expert on cross-examination, such factors, particularly missing teeth, can predispose a person, or lead, to TMJ dysfunction. (R.R. at 82–83.)

■ Where, as here, a claimant claims a right to medical benefits for an injury not initially alleged, we have held that, "where new, seemingly unrelated ... symptoms develop, allegedly stemming from [compensated] injuries, [but not having an obvious connection,] unequivocal medical testimony is required to establish the nexus."[11] *Hilton Hotel.* Thus, to prevail, Claimant bears the burden of producing unequivocal medical testimony establishing that the TMJ dysfunction she allegedly suffered was a result of her work-related accident of September 1, 1989.

---

Board (Totin), 102 Pa.Cmwlth. 528, 518 A.2d 1316 (1986); *Davis v. Workmen's Compensation Appeal Board (United Parcel Service)*, 92 Pa. Cmwlth. 294, 499 A.2d 703 (1985).

'Obvious' ... involves a nexus that is so clear that an untrained layperson would not have a problem in making the connection between the injury and a disability. This discernment often involves a 'natural and probable' development, ... and could sometimes involve an immediacy of occurrence such as an immediate back injury following heavy lifting.

*Tobias v. Workmen's Compensation Appeal Board (Nature's Way Nursery, Inc.)*, 141 Pa.Cmwlth. 438, 595 A.2d 781, 784–85, *appeal denied*, 529 Pa. 628, 600 A.2d 543 (1991).

9. Section 301(c)(1) of the Pennsylvania Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1) (Act), defines the terms "injury" and "personal injury" to mean "an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and *related thereto* ...." 77 P.S. § 411(1) (emphasis added).

10. A "head injury" is a broad category that more obviously encompasses contusions, concussions, headaches and the like, all of which Claimant suffered and was treated for immediately follow-

ing her accident of September 1, 1989. TMJ dysfunction, on the other hand, is not an obvious consequence, although certainly a possible one, of a blow to the head.

Moreover, as Dr. Goldberg noted in his deposition, nearly an eight month delay between the date of Claimant's work-related injury and the date of initial discovery and treatment of TMJ dysfunction that allegedly resulted from that injury "is certainly a delay in discovery that is extraordinary." (R.R. at 133–34.)

11. In *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Bd. of Educ.)*, 508 Pa. 360, 498 A.2d 800 (1985), we summarized the standards of competency for medical evidence:

Where medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause. Medical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship.

*Lewis*, 508 Pa. at 365–66, 498 A.2d at 802 (citations omitted).

■ Having determined that the burden rests on Claimant to establish the causal connection between her TMJ and her work accident, we now consider the evidence Claimant presented in support of her position. Claimant introduced the testimony of Dr. De Forno, who testified, within a reasonable degree of medical certainty, that the TMJ dysfunction he had diagnosed was "directly attributable" to the trauma Claimant suffered as a result of her work-related accident. (R.R. at 69–70.)

In direct opposition to Dr. De Forno's testimony, Dr. Goldberg testified that Claimant did not suffer from TMJ dysfunction at all.[12] (R.R. at 131.) Moreover, Dr. Goldberg stated that, even if Claimant had suffered from TMJ at one time, it was not due to her work accident, but rather, was attributable to Claimant's extraordinary number of missing teeth, the shifting of her remaining teeth, her collapsed bite and her malocclusion, all of which pre-dated the accident. (R.R. at 147–51). The referee found the testimony of Employer's expert, Dr. Goldberg, to be more credible, rejecting the opinion of Dr. De Forno as unconvincing. (Referee's Finding of Fact, No. 10.)

■ The referee, as the ultimate fact finder, has exclusive province over questions of credibility and evidentiary weight. *Hawkins v. Workmen's Compensation Appeal Board (Medical College of Pennsylvania)*, 138 Pa.Cmwlth. 180, 587 A.2d 387 (1991). In the exercise of broad discretion, the referee is free to accept or reject the testimony of any witness, including a medical expert, in whole or in part. *Werner v. Workmen's Compensation Appeal Board (Bernardi Bros., Inc.)*, 102 Pa.Cmwlth. 463, 518 A.2d 892 (1986). Because the referee here did not accept Claimant's evidence, Claimant was unable to meet her burden of proof.[13]

■ Claimant also contends that Employer is estopped from asserting a right to avoid payment of medical bills because Employer failed to file a suspension or termination petition. Again, we must disagree.

■ It is generally true that, as Claimant argues, once an employer has accepted liability for a work-related injury by filing a notice of compensation payable, it may not properly cease payment of *compensation benefits* in the absence of either a valid final receipt signed by the claimant or a referee's order terminating or suspending the employer's obligation to pay such benefits. *See* section 413 of the Act, 77 P.S. § 774. Under *Buchanan v. Workmen's Compensation Appeal Board (Mifflin County School Dist.)*, 167 Pa.Cmwlth. 335, 648 A.2d 99 *appeal denied*, 539 Pa. 682, 652 A.2d 1326 (1994), an employer may, however, unilaterally refuse to pay disputed *medical benefits* without first filing a petition with the referee where the employer challenges the causal relationship of medical treatment to an earlier work-related injury.[14] *See also Listino v. Workmen's Compensation Appeal Board (INA Life Ins. Co.)*, 659 A.2d 45 (Pa. Cmwlth.1995). Assuming the referee ulti-

---

12. Dr. Goldberg supported his opinion with extensive testimony on the nature and origin, as well as the treatment, of TMJ dysfunction, all of which, if believed by the fact finder, as here, was ample competent evidence to support the referee's decision to deny Claimant relief.

13. Even assuming *arguendo* that the causal connection between Claimant's treatment for TMJ dysfunction and her "head injury" is obvious, and that, therefore, the burden was on Employer to prove a lack of work-related causation, Employer has met its burden.

Employer presented expert testimony to the effect that Claimant did not suffer from TMJ dysfunction and, even if she did, it was not causally related to her prior work accident. The referee, who, as noted previously, may accept or reject the testimony of any witness, accepted this testimony over the less persuasive and less credible testimony of Claimant's expert.

14. Where an employer challenges the medical bills based on the "reasonableness and necessity" of the treatment, on the other hand, we held in *Stonebraker v. Workmen's Compensation Appeal Board (Seven Springs Farm, Inc.)*, 163 Pa. Cmwlth. 468, 641 A.2d 655 (1994), that the employer may never unilaterally cease medical payments until such time as a referee makes a determination terminating the employer's liability; the employer must continue to pay the claimant's medical expenses during the pendency of the litigation. Moreover, the employer bears the burden of proving either that the treatment is unnecessary or that the fees are unreasonable. *Lehigh Valley Refrigeration Services v. Workmen's Compensation Appeal Board (Nichol)*, 120 Pa. Cmwlth. 434, 548 A.2d 1321 (1988).

mately finds that the injury for which payment is sought is not causally connected to the prior work-related accident, the employer owes nothing further.[15] *See Buchanan; Listino.*

Thus, although, here, Employer apparently neither secured a valid final receipt signed by Claimant nor obtained an order terminating or suspending Claimant's benefits after she returned to work in November of 1989, Employer was not required to pay Claimant's medical bills for treatment of TMJ dysfunction because Employer challenged the causal relationship between the medical expenses and Claimant's original "head injury."[16] Moreover, because Claimant failed to sustain her burden of establishing that she suffered a TMJ injury as a result of her work-related accident of September 1, 1989, Employer is not liable for payment of the disputed medical bills.[17]

Accordingly, we affirm the order of the Workmen's Compensation Appeal Board denying both Claimant's Claim and Penalty Petitions.

### ORDER

AND NOW, this 1st day of February, 1996, the order of the Workmen's Compensation Appeal Board, entered on March 7, 1995, is affirmed.

---

15. If, however, an employer refuses to pay a claimant's medical costs because of an alleged lack of causation, and the referee later determines these bills to be causally connected to the work-related injury, the *Stonebraker* rule would apply. *See supra* footnote 14.

Therefore, in proceeding as it did, Employer assumed the risk that, under *Stonebraker,* it might have potentially had to retroactively pay all disputed medical bills, as well as penalties, had Claimant been able to establish the requisite causal connection. *See also Listino.* Thus, we must stress that the *Stonebraker* rule remains valid law and shall be applied in all situations except those where, as here, the narrowly construed *Buchanan* exception applies.

16. Claimant also argues that, even if Employer had filed a suspension or termination petition, or

even if, alternatively, the referee had terminated benefits in the absence of such a petition, the earliest date on which benefits could be suspended or terminated is the date of the referee's decision. In light of our foregoing discussion, we find this argument to be without merit.

17. Because we agree that Employer's refusal to pay the medical bills that Claimant submitted for her TMJ dysfunction did not violate any of the provisions of the Act, we must conclude that the denial of penalties was proper. *See* section 435(d) of the Act, 77 P.S. § 991(d); *Ehrhart v. Workmen's Compensation Appeal Board (Liquor Control Board),* 78 Pa.Cmwlth. 123, 466 A.2d 1139 (1983).