# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tammy Sengle, : 
                     Petitioner : 
  : 
              v. :   No. 2006 C.D. 2016
  :   Submitted: June 9, 2017
Workers' Compensation Appeal : 
Board (Lowes Home Centers, Inc.), : 
                Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: August 25, 2017**

Tammy Sengle (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) affirming the Decision and Remand Decision of a Workers' Compensation Judge (WCJ) that dismissed Claimant's Claim Petition and Penalty Petition, granted the Termination Petition filed by Lowes Home Centers, Inc. (Employer), and denied Claimant's request for unreasonable contest attorney's fees. Claimant argues the Board erred in affirming because she is entitled to at least partial disability benefits; Employer should pay a penalty based on its violation of the Workers' Compensation Act[1] (Act) where it did not

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 - 1041.4, 2501-2708.

timely pay medical bills related to her work injury; Employer did not meet its burden of proof on its Termination Petition; and Employer's contest was unreasonable. She further asserts the WCJ's Remand Decision was not reasoned and did not comply with the Board's Remand Order. Because the WCJ's Remand Decision is reasoned and his findings regarding the Claim Petition, Termination Petition, and unreasonable contest fees are supported by substantial evidence, we affirm those parts of the Board's Order. However, we reverse in part and remand for further proceedings on the Penalty Petition because the WCJ did not address evidence in the record related to certain medical bills in the record which Claimant asserts were work-related and unpaid.

## I.    Background

The following facts are undisputed, except where noted. Claimant worked full-time for Employer as a department manager, which required her to perform a variety of physical and non-physical tasks. On November 15, 2010, Claimant was "down stocking" items while on a 20-foot tall ladder when a box slid off a shelf and wedged between the ladder and Claimant's left hip, leaving her stuck. After a co-worker removed the box, Claimant was in too much pain to move so the Store Manager helped Claimant down the ladder and into the store's training room. The Store Manager took Claimant to the emergency room, where she had x-rays taken and received treatment. Claimant was removed from work until November 19, 2010.

While en route to the emergency room, the Store Manager told Claimant that she had to submit to a drug test. Claimant told Store Manager that she had smoked some marijuana residue the night before, which Store Manager then reported to

2

Employer's Human Resource Manager (HR Manager). Employer has a drug testing policy (Drug Policy), which Claimant testified Store Manager told her was discretionary and Store Manager and HR Manager testified was mandatory. The Drug Policy entails a drug test within 32 hours of an employee's receipt of medical treatment for a work accident, and the failure to comply can result in immediate termination. (WCJ Decision, Findings of Fact (FOF) ¶ 7, Nov. 8, 2012; R.R. at 280.) Store Manager stated she told Claimant to take the drug test when Claimant returned to the store to pick up her car on November 15, 2010, but Claimant did not; an assertion Claimant denied. HR Manager indicated she contacted Claimant on Wednesday, Thursday, and Friday of the week of November 15, 2010, advising Claimant of her obligation to take a drug test. Although Claimant said she would come to the store on Wednesday and Thursday to take the test, Claimant did not appear. Claimant denied receiving a voice message from HR Manager on one of the days, but admitted she told HR Manager that she would come to the store to take the drug test, but did not do so. Claimant took the drug test on Friday, November 19, 2010, which was negative.

Claimant returned to work on Monday, November 22, 2010. After attempting to perform her normal duties and being unable to do so, Claimant sought treatment from Employer's panel physician. Based on Claimant's complaints, the panel physician restricted Claimant's ability to drive, the number of hours she could work to five per day, and the duties she could perform to sedentary, which Employer accommodated. Employer issued a Medical Only Notice of Compensation Payable (Medical Only NCP), dated December 7, 2010,

3

accepting a work injury in the nature of a lumbar strain and sprain.[2] (R.R. at 388.) Employer discharged Claimant on or about December 10, 2010, for her failure to take the mandatory drug test within the time period required by the Drug Policy. On January 5, 2011, Employer issued a Notice of Compensation Denial (**NCD**), indicating the "**Alleged** Injury" was "left leg" "sciatica," and denying that Claimant suffered this work-related injury. (C.R. at Item 27 (emphasis added).)

## II.    Proceedings Before the WCJ

Claimant filed her Claim Petition on January 20, 2011, asserting "she suffered a low back, left hip, and left leg injury" on November 15, 2010, and seeking partial disability from November 15, 2010 to December 11, 2010, and full disability beginning December 12, 2010, the payment of medical bills, and unreasonable contest attorney's fees. (FOF ¶ 3.) Employer filed an answer denying the allegation that Claimant sustained a disabling work injury on November 15, 2010. Employer filed its Termination Petition on June 3, 2011, asserting Claimant had fully recovered from her work injury as of May 3, 2011, allegations Claimant denied. Claimant subsequently filed a Penalty Petition on April 23, 2012, asserting Employer had not paid medical bills that were related to her work injury. The Petitions were assigned to the WCJ, who held hearings on April 7, 2011, and on May 25, 2012, at which the Petitions were consolidated.

Claimant testified before the WCJ at the two hearings,[3] about the above-stated facts, her submission of various medical bills to Employer's insurer

---

[2] The time-stamped copy of the Medical Only NCP in the record indicates it was filed with the WCJ Office of Adjudication on August 29, 2011. (R.R. at 388.)

[3] Claimant's testimony can be found at pages 16 to 110 and 303 to 322 of the Reproduced Record.

(Insurer), some of which had been denied, and her current condition, which requires her to use a cane and knee brace. Claimant also submitted the deposition testimony of her family physician (Claimant's Expert), a board-certified family physician.[4] Claimant's Expert testified he first saw Claimant for the alleged work-related injuries on April 20, 2011, and last saw Claimant for those injuries in September 2011. Based on his physical examination of Claimant, review of a pre-injury MRI from 2009, a post-injury MRI taken on December 2, 2010, and EMG performed by a neurosurgeon, Claimant's Expert opined Claimant had an "osteophyte formation in her lower back, which caused nerve root compression" and which he related to the work incident. (FOF ¶ 9.) Claimant's Expert testified Claimant continued to need treatment and would "not recover in the near future." (*Id.*)

Employer presented the deposition testimony of HR Manager and Store Manager,[5] both of whom no longer work for Employer, who described the above-stated facts. Employer also offered the deposition testimony of its expert (Employer's Expert), a board-certified neurologist who performed an Independent Medical Examination (IME) of Claimant on May 3, 2011.[6] During the IME, Employer's Expert: took a history from Claimant; physically examined Claimant, which revealed inconsistent results suggesting symptom magnification; and reviewed Claimant's medical records, which showed a history of lower back problems dating back to 1996. Employer's Expert recalled Claimant in particular

---

[4] Claimant's Expert's deposition testimony can be found at pages 188 to 244 of the Reproduced Record.

[5] The deposition testimony of HR Manager and Store Manager can be found at pages 258 to 268 and 270 to 275 of the Reproduced Record, respectively.

[6] Employer's Expert's deposition testimony can be found at pages 122 to 169 of the Reproduced Record.

5

because he observed her "hang her cane on a tree while she smoked a cigarette" and "walk[] without a limp when she was in the parking lot, but . . . had a limp when she came into his office." (FOF ¶ 10.) According to Employer's Expert, the osteoarthritis, i.e., the osteophyte formation, seen in the 2010 MRI would have taken years to develop. Employer's Expert opined Claimant sustained a work-related "left lumbosacral strain and sprain with radicular elements into her left lower extremity," from which Claimant had fully-recovered as of May 3, 2011, and any remaining pain was unrelated to the work injury. (*Id.*)

The WCJ reviewed the evidence and did not find Claimant credible based on her demeanor and the conflicting testimony of Store Manager and HR Manager. The WCJ found HR Manager and Store Manager credible, noting that they no longer work for Employer and the contemporaneous paperwork supported their version of the events. The WCJ considered the experts' testimonies and found Employer's Expert more credible based on his greater expertise in back injuries and because Claimant's Expert did not begin treating Claimant for many months after the injury and did not see her after September 2011. Finally, the WCJ noted there was no testimony that Claimant's medical bills had been timely and properly submitted to Insurer on the required forms or that Insurer had refused to pay such medical bills. Based on these evidentiary determinations, the WCJ found that: Claimant sustained a work-related injury as set forth in the Medical Only NCP but did not establish that she suffered loss of earnings, i.e., disability, as a result because she was discharged for cause; Claimant had fully recovered from those injuries and the termination of benefits was appropriate; and Claimant did not prove a violation of the Act that would warrant the imposition of penalties. (WCJ Decision, Conclusions of Law (COL) ¶¶ 2-5, Nov. 8, 2012.) The WCJ noted

Employer "is responsible for Claimant's work-related medical expenses incurred between November 15, 2010, and May 3, 2011, subject to the cost containment provisions of the Act." (*Id.* ¶ 6.) Accordingly, the WCJ dismissed the Penalty Petition, dismissed the Claim Petition as moot because the injury had been accepted in the Medical Only NCP, and granted the Termination Petition.

## III. Claimant's Appeal to the Board

Claimant appealed the WCJ's Decision to the Board. Claimant argued there was not substantial, competent evidence to support the termination of benefits because the NCD acknowledged a left leg sciatica injury and Employer's Expert did not opine that she had fully recovered from that injury. The Board held there was no authority to support the position that a NCD denying the occurrence of a work-related injury actually accepts that injury and supersedes the injury accepted in the Medical Only NCP. Because Employer's Expert credibly testified that Claimant had fully recovered from the injuries accepted in the Medical Only NCP and had no disability related to those injuries, the Board affirmed.

Claimant also argued that the WCJ's conclusion that her medical benefits would be terminated on May 3, 2011, was erroneous because Employer had an obligation to pay related medical benefits through November 8, 2012, the date of the WCJ's Decision. The Board agreed with Claimant's "general premise," noting that having issued the Medical Only NCP, Employer could not unilaterally stop paying for related medical bills until an order authorized it to do so. (Board Op. at 15, Aug. 20, 2014 (2014 Opinion) (citing *McLaughlin v. Workers' Comp. Appeal Bd. (St. Francis Country House)*, 808 A.2d 285 (Pa. Cmwlth. 2002)).) Thus, the

Board held that "[t]o the extent the Decision implies to the contrary, it is now clarified." (*Id.* at 16.)

Claimant averred that the WCJ should have granted the Penalty Petition for unpaid medical expenses. The Board found no error because it was Claimant's burden to prove a violation of the Act or accompanying regulations and the WCJ did not credit Claimant's testimony that work-related medical bills remained unpaid and found that there was no credible evidence that the bills were timely submitted on the proper forms and rejected. To the extent that Claimant asserted Employer acknowledged it had not paid certain bills, the Board noted Employer did so believing that those bills were not causally related to the accepted work injury, which are not subject to reimbursement under the Act.

Claimant also challenged the findings that she was discharged for cause and that her loss of wages after December 10, 2010, was the result of her acting in bad faith by not taking the drug test. Therefore, she argued she was entitled to disability benefits. She also asserted, if her discharge was valid, she was entitled to partial disability benefits between, at least, November 15, 2010 and December 10, 2010, because she had some disability related to her work injury prior to her discharge. While the Board held the findings that Claimant was discharged for cause and acted in bad faith by violating the Drug Policy were supported by credited testimony, the Board concluded "clearer resolution from the fact-finder" was required on Claimant's entitlement to partial disability benefits. (*Id.* at 17-18.) The Board noted that it was undisputed that Claimant sustained a work injury on November 15, 2010, was not released to work until November 22, 2010, and was placed on restrictions, which Employer accommodated, as of December 3, 2010. Because the WCJ "did not specifically comment on" this period "or on the impact,

8

if any, of Claimant's work-related restrictions upon her earnings or earning capacity," the Board remanded this issue to the WCJ to "render a determination on Claimant's allegation of an entitlement to partial disability benefits" and this "determination should meet the reasoned decision requirements of [Section 422(a) of] the Act," 77 P.S. § 834. (*Id.*) The Board directed the WCJ, in making that determination, to "specifically consider Claimant's contention that she is entitled to an ongoing award as of the date of injury pursuant to *Vista [International Hotel v. Workers' Compensation Appeal Board (Daniels)*, 742 A.2d 649 (Pa. 1999)] . . . . [and] *BJ's Wholesale Club [v. Workers' Compensation Appeal Board (Pearson)*, 43 A.3d 559 (Pa. Cmwlth. 2012).]" (2014 Opinion at 18 n.5.) The Board also directed the WCJ to address Claimant's assertion that Employer did not present a reasonable contest, which had been raised by Claimant but not addressed in the WCJ's Decision.

## IV. The WCJ's Decision on Remand

On September 18, 2015, the WCJ issued his decision in response to the Board's remand (Remand Decision). Therein, the WCJ found it was undisputed that "Claimant sustained a work injury on November 15, 2010," "did not return to work until November 22, 2010," and was "terminated by [Employer] on December 10, 2010." (Remand Decision, Findings of Fact (Remand FOF) ¶¶ 3-4.) The WCJ also found:

> Admittedly, the Claimant did miss some time during this period for reasons extensively related to her work injury. However, the Claimant was previously found to be not credible in this matter. Claimant's treating physician was found to be not credible because he relied extensively on history and description of symptoms given to him by the Claimant. Because Claimant has been found to be not credible in her testimony and in her descriptions to her treating

9

physicians, this Judge questions Claimant's credibility in reporting her symptoms to her treating panel physicians immediately after her injury. This Judge notes that it is impossible to determine whether Claimant was actually unable to return to work or whether she was avoiding a return to work because she did not want to take a drug test.

(*Id.* ¶ 6.) Based on his finding Claimant not credible, the WCJ "found that Claimant was not disabled for the period beginning November 15, 2010 and ending on December 10, 2010" because she had "failed to prove by sufficient, competent, and credible evidence that she sustained any disability as a result of her work injury." (*Id.* ¶ 7; Remand Decision, Conclusions of Law (Remand COL) ¶ 2.) The WCJ also concluded that Employer's contest was reasonable. Accordingly, the WCJ dismissed the Claim Petition.

## V. Claimant's Appeal of the Remand Decision to the Board

Claimant appealed the Remand Decision to the Board, asserting it was not reasoned because the WCJ "arbitrarily rejected or ignored substantial evidence," did not comply with the Board's remand instructions, and it was error to find Employer's contest reasonable. (Board Op. at 3, Nov. 14, 2016 (2016 Opinion).) The Board rejected these arguments and affirmed.[7] It held that the WCJ explained that because he did not find Claimant credible and it was impossible to determine whether Claimant was actually unable to return to work for the initial period or

---

[7] After the Board issued its 2014 Opinion, Claimant filed a second Penalty Petition, on December 23, 2014, asserting Employer violated the Act by not paying related medical bills through May 3, 2011, and that she was not waiving her entitlement to the payment of medical bills after May 3, 2011. (R.R. at 358.) Employer denied that it had not paid these medical bills, as it had been ordered to do so by the WCJ in the initial Decision. (R.R. at 362.) Although the Remand Decision referenced this second Penalty Petition in addition to the Claim Petition, Termination Petition, and prior Penalty Petition, the Board noted that the Remand Decision addressed only the Claim Petition. (Board 2016 Op. at 3 n.1.)

10

was not returning in order to avoid the drug test, he was "reject[ing] any evidence she presented from initial and panel providers removing or restricting her from work based on her complaints to those providers." (*Id.* at 11.) According to the Board, the WCJ, as directed, made a specific determination on Claimant's eligibility for partial disability benefits and the WCJ's denial of relief based on his credibility determinations did not render the Remand Decision not reasoned under Section 422(a) of the Act. The Board further held there was no error in finding Employer's contest reasonable because Employer successfully defended against the Claim Petition and Penalty Petitions. Claimant now petitions this Court for review.[8]

## VI. Claimant's Petition for Review to this Court

On appeal, Claimant reiterates many of the arguments she made to the Board regarding the WCJ's Decision and Remand Decision, which we will address in turn. But first, we note the following general principles that govern our review in all workers' compensation matters. It is well-settled that the WCJ is the fact-finder, and the review of the witnesses' testimony and determinations as to the weight and credibility of that evidence are solely for the WCJ. *Miller v. Workers' Comp. Appeal Bd. (Millard Refrigerated Serv. and Sentry Claims Serv.)*, 47 A.3d 206, 209 (Pa. Cmwlth. 2012). "A WCJ may accept or reject the testimony of any witness in whole or in part." *Id.* "[T]he appellate role is not to reweigh the evidence or to review the credibility of the witnesses." *Bethenergy Mines, Inc. v.*

---

[8] "Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Phila. v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

11

*Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). If a witness testifies in person, the WCJ may base a credibility determination on the demeanor of the witness. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052-53 (Pa. 2003). However, if a witness testifies by deposition, the WCJ must provide "some articulation of the actual objective basis for the credibility determination." *Id.* at 1053.

A. Claim Petition

"In a proceeding on a claim petition, the claimant bears the burden of establishing a work-related injury rendering the claimant incapable of performing the time-of-injury job." *Vista Int'l Hotel*, 742 A.2d at 654. The claimant has the burden of proving not only that she is physically impaired, but also has a loss of earnings as a result of the work-related injury. *BJ's Wholesale Club*, 43 A.3d at 562-63. If an employer alleges that the "loss of earnings is the result of a post-injury involuntary discharge, the employer bears the burden of pro[ving]" "that suitable work was available or would have been available but for the circumstances which merit allocation of the consequences of the discharge to the claimant, such as the claimant's lack of good faith," or bad faith. *Second Breath v. Workers' Comp. Appeal Bd. (Gurski)*, 799 A.2d 892, 900 (Pa. Cmwlth. 2002) (citing *Vista Int'l Hotel*, 742 A.2d at 655-56). As fact-finder, the WCJ makes the determination of whether "a claimant was discharged for conduct evidencing lack of good faith." *Id.* at 900. However, even if a claimant is involuntarily discharged under such circumstances, partial disability benefits may be paid where the claimant previously had returned to work with a partial loss of earnings caused by the work injury and was subsequently discharged for cause. *Vista Int'l Hotel*, 742 A.2d at

655-56 (citing *Howze v. Workers' Comp. Appeal Bd. (General Elec. Co.)*, 714 A.2d 1140, 1142 (Pa. Cmwlth. 1998)).  This is because the claimant's income stream is not diminished solely by the involuntary discharge, but also by the work injury. *Id.* at 655.

Claimant bore the burden of proving that she suffered a **disabling** work injury in order to prevail on her Claim Petition.  Although Claimant argues Employer did not present evidence that the injury did not occur or that she did not sustain a wage loss, the burden of proving disability always remained on Claimant.[9]  *Potere v. Workers' Comp. Appeal Bd. (Kemcorp)*, 21 A.3d 684, 690 (Pa. Cmwlth. 2011).  The WCJ did not find Claimant's testimony credible based on her demeanor and the conflicting testimony of Employer's witnesses.  (FOF ¶¶ 11-12.)  Based on that credibility determination, the WCJ did not credit any of the evidence that would support a finding of either total or partial disability that had been based on **Claimant's** reports of her symptoms.  (Remand FOF ¶ 6; Remand COL ¶ 2.)  Thus, the WCJ did not credit Claimant's Expert's testimony or the treating physicians' notes issued immediately following the injury that removed her from work or placed restrictions on the number of hours she could work or the duties she could perform based on her work injury.  Without this evidence, Claimant could not establish that any loss of earnings she may have experienced

---

[9] Claimant also relies, in part, on Employer's issuance of a Temporary Notice of Compensation Payable Medical Only (TNCP) on December 7, 2010, alleging a work injury, which was stopped pursuant to a Notice Stopping the TNCP on January 3, 2011.  (R.R. at 13-15; Claimant's Br. at 11.)  Although Claimant attempted to submit these documents at the April 7, 2011 hearing, the WCJ would not admit them, noting that they are not intended to be "prejudic[ial]" or binding on an employer.  (R.R. at 15.)  Claimant asserts in her brief that the TNCP alleged an injury of left leg sciatica.  (Claimant's Br. at 11.)

was a result of the work-related injury and, therefore, did not meet her burden of proof.

Claimant's inability to meet her initial burden of proof renders her reliance on *Vista International Hotel* to argue she is entitled to at least ongoing **partial** disability benefits beginning when she was discharged on December 10, 2010, misplaced. In *Vista International Hotel*, the claimant's work-related partial loss of earnings was not in dispute. 742 A.2d at 656-57 (the employer did "not challenge the initial conferral of total disability benefits, or the award of partial disability through the date of . . . discharge"). Thus, unlike Claimant here, the claimant in *Vista International Hotel* met her burden of proving a disabling work-related injury and, subsequently, that she was receiving partial disability benefits as a result of that injury at the time of her discharge, which made her eligible for ongoing partial disability benefits after her discharge. *Id.*

Finally, to the extent that Claimant argues she is entitled to disability benefits following her discharge because she did not act in bad faith in not timely taking the drug test, the WCJ, acting as fact-finder, credited the testimony of Store Manager and HR Manager describing the Drug Policy, that they repeatedly informed Claimant of her obligation to take the drug test in the time period prescribed, and that, although Claimant repeatedly stated she would be in to take the test, she did not appear until after the time had expired in violation of the Drug Policy. A discharge based on a violation of an employer's rules evidences a lack of good faith on the part of the claimant. *See BJ's Wholesale Club*, 43 A.3d at 563 (stating "[v]iolation of an employer's substance abuse policy constitutes conduct that amounts to lack of good faith on the part of the claimant and a claimant terminated for such conduct is not entitled to disability benefits for that loss");

14

*Sauer ex rel. Sauer v. Workers' Comp. Appeal Bd. (Verizon Pa., Inc.)*, 26 A.3d 531, 536 (Pa. Cmwlth. 2011) (holding that a WCJ is to determine whether a claimant was discharged for a lack of good faith and that the claimant's discharge for violating the employer's "code of business conduct" made him ineligible for benefits). Based on the credited testimony, there was no error in the WCJ's determination that Claimant was discharged for cause.

B. Termination Petition

To obtain a termination of benefits, Employer had to prove "that [C]laimant fully recovered from h[er] work injury and has no remaining disability, or that any remaining disability is no longer related to the work injury." *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Serv., Inc.)*, 126 A.3d 394, 402 n.13 (Pa. Cmwlth. 2015). An employer meets this burden when its medical expert unequivocally testifies that "it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). Where a particular injury has been accepted or adjudicated as being work-related, a physician's opinion of full recovery that does not recognize and address that injury is insufficient to support the termination of benefits. *GA & FC Wagman, Inc. v. Workers' Comp. Appeal Bd. (Aucker)*, 785 A.2d 1087, 1092 (Pa. Cmwlth. 2001).

Claimant argues Employer did not meet its burden of proof because it "acknowledge[d]" "left leg" "sciatica" as work-related based on the description of the "**[a]lleged** [i]njury" in Employer's **NCD,** (Claimant's Br. at 21; C.R. at Item 27

15

(emphasis added)), and Employer's Expert did not opine that she had fully recovered from this injury. Claimant's arguments are unpersuasive.

"Where the employer **denies** the **reported injury**, it must file a [**NCD**]." *Merrell v. Workers' Comp. Appeal Bd. (Commonwealth of Pa. Dep't of Corr.)*, 158 A.3d 242, 249 (Pa. Cmwlth. 2017) (citing 34 Pa. Code § 121.13[10]) (emphasis added). By contrast, an employer who **accepts an injury** as being work-related files either a medical only NCP or an NCP, depending on whether the employer accepts that a loss of earnings has occurred. *See* 34 Pa. Code § 121.7 (setting forth when an employer would file an NCP or medical only NCP). Claimant cites no authority to support her contention that, an NCD, a document **denying** the existence of an alleged injury, constitutes an **acknowledgement** of that injury. Here, Employer issued the Medical Only NCP acknowledging that Claimant sustained a work-related left lumbosacral sprain and strain. (R.R. at 388.) It is from this injury that Employer's Expert credibly opined, based on his examination of Claimant and her medical records, including objective studies, that Claimant is fully recovered, that she can return to work without restrictions, and that any remaining pain is associated with Claimant's baseline condition. Such credited testimony satisfies Employer's burden of proof and supports the termination of benefits. *Udvari*, 705 A.2d at 1293.

C. Penalty Petition

Section 435(d)(i) of the Act permits the imposition of penalties, stating

---

[10] This regulation states "[i]f compensation is controverted, a [NCD] shall be sent to the employee or dependent and filed with the Bureau [of Workers' Compensation], fully stating the grounds upon which the right to compensation is controverted, within 21 days after notice or knowledge to the employer of the employee's disability or death." 34 Pa. Code § 121.13.

16

[e]mployers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

77 P.S. § 991(d)(i).[11]   To prevail on a penalty petition, the claimant bears the burden of producing evidence that, if credited, establishes the employer's violation of the Act. *Sanders v. Workers' Comp. Appeal Bd. (Marriott Corp.)*, 756 A.2d 129, 132-33 (Pa. Cmwlth. 2000). If claimant's burden is met, the burden shifts to the employer to prove that no violation occurred. *Shuster v. Workers' Comp. Appeal Bd. (Pa. Human Relations Comm'n)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000). For a penalty to be appropriate, the violation "must appear in the record." *Id.* The decision to award a penalty for a violation of the Act, as well as the amount of penalties, is solely within the WCJ's discretion. *Brutico v. Workers' Comp. Appeal Bd. (U.S. Airways, Inc.)*, 866 A.2d 1152, 1156 (Pa. Cmwlth. 2004). Absent an abuse of discretion, the WCJ's decision will not be disturbed on appeal. *Id.* "An abuse of discretion is not merely an error of judgment but occurs, *inter alia*, when the law is misapplied in reaching a conclusion." *Westinghouse Elec. Corp. v. Workers' Comp. Appeal Bd. (Weaver)*, 823 A.2d 209, 213-14 (Pa. Cmwlth. 2003).

Claimant's Penalty Petition is based on her belief that Employer violated the Act by refusing to pay medical bills she claims are associated with her work-related injury, a fact she maintains Employer's counsel admitted during the May 25, 2012 hearing. The WCJ found there was no proof that these bills were

---

[11] Added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*.

17

submitted to Insurer on the proper forms, with the proper medical reports, and in a timely manner, and that payment had been refused. (FOF ¶ 14; COL ¶ 5.) Claimant argues that, contrary to the WCJ's findings, the record contains medical bills that were submitted on the proper forms with medical reports, as well as denials of those bills by Insurer.

The Board's regulations require that:

> [r]equests for payment of medical bills shall be made either on the [Health Care Financing Administration (]HCFA[)] Form 1500 or the UB92 Form (HCFA Form 1450), or any successor forms, required by HCFA for submission of Medicare claims. If HCFA accepts a form for submission of Medicare claims by a certain provider, that form shall be acceptable for billing under the [A]ct.

34 Pa. Code § 127.201(a). Providers must also file periodic medical reports of the treatment provided. Section 306(f.1)(2) of the Act, 77 P.S. § 531(2);[12] 34 Pa. Code § 127.203.[13] Until both the bills and medical reports are submitted on the required

---

[12] This section provides:

> Any provider who treats an injured employe shall be required to file periodic reports with the employer on a form prescribed by the department which shall include, where pertinent, history, diagnosis, treatment, prognosis and physical findings. The report shall be filed within ten (10) days of commencing treatment and at least once a month thereafter as long as treatment continues. The employer shall not be liable to pay for such treatment until a report has been filed.

77 P.S. § 531(2).

[13] This regulation states, in pertinent part:

> (a) Providers who treat injured employees are required to submit periodic medical reports to the employer, commencing 10 days after treatment begins and at least once a month thereafter as long as treatment continues. If the employer is covered by an insurer, the provider shall submit the report to the insurer.
>     . . . .

**(Footnote continued on next page…)**

forms, the employer is not obligated to pay those bills. 77 P.S. § 531(2); 34 Pa. Code §§ 127.202(a) (until a provider submits a bill on the required form, "insurers are not required to pay for the treatment billed"), 127.203(d); *Westinghouse Elec. Corp./CBS v. Workers' Comp. Appeal Bd. (Burger)*, 838 A.2d 831, 839 (Pa. Cmwlth. 2003).

Moreover, "an employer may . . . unilaterally refuse to pay disputed medical benefits without first filing a petition with the [WCJ] where the employer challenges the causal relationship of [the] medical treatment to an earlier work-related injury" and, if correct, does not violate the Act. *Green v. Workmen's Comp. Appeal Bd. (Ass'n for Retarded Citizens)*, 670 A.2d 1216, 1221-22 & n.17 (Pa. Cmwlth. 1996). If those medical costs are found, however, to be causally-related to the work injury, the employer must pay the costs accrued, at least through the WCJ's decision, and is subject to penalties at the WCJ's discretion. *Listino v. Workmen's Comp. Appeal Bd. (INA Life Ins. Co.)*, 659 A.2d 45, 48 (Pa. Cmwlth. 1995).

---

**(continued…)**

    (c) The medical reports required by subsection (a) shall be submitted on a form prescribed by the Bureau for that purpose. The form shall require the provider to supply, when pertinent, information on the claimant's history, the diagnosis, a description of the treatment and services rendered, the physical findings and the prognosis, including whether or not there has been recovery enabling the claimant to return to pre-injury work without limitations. Providers shall supply only the information applicable to the treatment or services rendered.

    (d) If a provider does not submit the required medical reports on the prescribed form, the insurer is not obligated to pay for the treatment covered by the report until the required report is received by the insurer.

34 Pa. Code § 127.203.

19

Claimant presented as evidence numerous medical bills, which she claims were related to her work injury and were either unpaid or were paid by her out-of-pocket and not reimbursed. These include printouts from CVS pharmacy for various prescriptions between November 22, 2010 and September 21, 2011,[14] and a receipt for other treatment received between April 20, 2011 and September 21, 2011, all of which she claims were paid out-of-pocket. (R.R. at 389-93.) She submitted copies of bills associated with her treatment at the emergency room on November 15, 2010, dated November 23, 2010, November 29, 2010, and December 7, 2010, respectively, as well as an October 17, 2011 bill for an MRI of her lumbar spine, performed on September 1, 2011. (R.R. at 399-402.) There also were numerous medical bills submitted on Insurer's claim form 1500 (Claim Form) for prescriptions dated between September 21, 2011 and April 25, 2012. (R.R. at 403-28.) Lastly, Claimant presented other bills submitted on Insurer's Claim Form between October 4, 2011 and November 8, 2011, with accompanying medical notes and denials from Insurer based on the matter being in litigation and/or the claim being denied. (R.R. at 429-63.)

A review of the record reveals that, with regard to many of the medical bills, the only evidence of their submission to and their non-payment by Insurer is Claimant's testimony. Claimant testified at the initial hearing, on April 7, 2011, that, with the exception of some of her prescriptions and her treatment with the panel physician, her medical bills had not been paid. (R.R. at 56-58.) She presented the packet of medical bills at the May 25, 2012 hearing and stated, again,

_____

[14] Per the Board's regulations, "[i]f an injured employe pays [for a prescription] because the insurer initially does not accept liability for the claim under the [A]ct, or denies liability to pay for the prescription, the insurer shall reimburse the injured employe . . ., once liability has been admitted or determined." 34 Pa. Code § 127.133.

that they had not been paid. (Packet of Medical Bills, R.R. at 295-96; Hr'g Tr. at 5, May 25, 2012.[15]) The WCJ did not credit Claimant's testimony. This credibility determination resolves the issue of Employer's violation of the Act regarding many of these medical bills.

However, there remain in the record medical bills that, on their face, appear to have been submitted on Insurer's Claim Form "1500," which were accompanied by a medical report, and which Insurer did deny. (R.R. at 429-63.) These bills relate to certain treatment provided at Northeastern Rehabilitation and Pain Management, which were denied, per Employer's explanation at the May 25, 2012 hearing, because they were not related to Claimant's work injury. (R.R. at 296-98.) The WCJ rejected this documentary evidence without comment. But the presence of these medical bills and the undisputed denials by Insurer renders the WCJ's findings that there was "**no proof** that [Employer/Insurer] has **failed or refused to pay** properly submitted medical bills" and "**no record** that [Employer/Insurer] has **ever refused to pay** these medical bills," (FOF ¶ 14; COL ¶ 5 (emphasis added)), not supported by substantial evidence in regard to these medical bills.

While an employer may unilaterally refuse to pay medical bills it believes are unrelated to a claimant's work injury, it must be correct or else it violates the Act. *Green*, 670 A.2d at 1221-22 & n.17; *Listino*, 659 A.2d at 48. If a WCJ finds that the refused medical bills were causally-related to the work injury, the employer finds itself liable not only for the payment of those bills, but also, potentially, for the payment of statutory penalties. *Listino*, 659 A.2d at 48. The

---

[15] This page of the hearing transcript containing Claimant's testimony is not included in the Reproduced Record.

21

WCJ here never made a determination on whether the medical bills in the record that were denied by Insurer were causally-related, or not, to Claimant's left lumbosacral sprain and strain. Until this determination is made, Employer's alleged violation of the Act, its liability for these denied medical bills, and, potentially, for statutory penalties remains an open question. Thus, we will remand for the WCJ to make such a determination and, if this determination requires additional evidence, the WCJ is directed to hold a hearing at which such evidence may be presented.[16]

### D. Date of Termination of Payment of Medical Benefits

Section 306(f.1)(1)(i) of the Act, 77 P.S. § 531(1)(i), provides that an employer must pay for reasonable medical services related to a work injury as and when needed. Once an employer accepts liability for those services, such as in a medical only NCP, an employer may not unilaterally cease making medical benefit payments for these work-related expenses without authorization.[17] *McLaughlin*, 808 A.2d at 288-89. In his initial Decision, the WCJ directed that Employer "is responsible for Claimant's work-related medical expenses incurred between November 15, 2010, and **May 3, 2011**, subject to the cost containment provisions of the Act." (COL ¶ 6 (emphasis added).) The Board's 2014 Opinion noted that because Employer accepted the left lumbosacral sprain and strain in the Medical Only NCP, it was responsible for paying any causally-related medical bills through

---

[16] Notably, Employer did not object to the packet of medical bills and Insurer's denials being admitted into the record. It did, however, object to the medical reports attached to the medical bills. (R.R. at 296-97.)

[17] This is unless the employer does so because it is challenging the medical treatment on the basis of causation, rather than as being not "reasonable" or "necessary." *Green*, 670 A.2d at 1221 & n.14; *Listino*, 659 A.2d at 48.

the date of the WCJ's Decision finding Claimant fully recovered from that injury, i.e., November 8, 2012. It observed that to the extent the WCJ's holding was otherwise, that holding was "clarified." (Board 2014 Op. at 16.) Claimant points out that, despite the Board's statement, the WCJ did not change the relevant date from May 3, 2011, to November 8, 2012. For purposes of clarity, we direct the WCJ, on remand, to revise the relevant conclusion of law in accord with the Board's 2014 Opinion.

E. Unreasonable Contest Fees

Section 440(a) of the Act[18] provides that:

> [i]n any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part **shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee**, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: **Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer**.

77 P.S. § 996(a) (emphasis added). "[I]n contested workers' compensation cases, an award of attorney's fees to the claimant is the rule and their exclusion is the exception, to be applied only in those cases where the record establishes that an employer's or insurance carrier's contest is reasonable." *Lemansky v. Workers'*

---

[18] Added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 996(a).

*Comp. Appeal Bd. (Hagan Ice Cream Co.)*, 738 A.2d 498, 501 (Pa. Cmwlth. 1999). The employer bears the burden of presenting sufficient evidence to establish a reasonable basis for a contest. *Id.* "Whether an employer presents a reasonable basis for its contest is a question of law fully reviewable by this Court." *Id.* The primary question is whether the employer's "contest was brought to resolve a genuinely disputed issue or merely for purposes of harassment." *Second Breath*, 799 A.2d at 901. "A reasonable contest is established when medical evidence is conflicting or susceptible to contrary inferences, and there is an absence of evidence that an employer's contest is frivolous or filed to harass a claimant." *U.S. Steel Corp. v. Workers' Comp. Appeal Bd. (Luczki)*, 887 A.2d 817, 821 (Pa. Cmwlth. 2006). Moreover, if a claimant would have had to hire an attorney regardless of the filing, or failure to file, a medical only NCP because the nature of the injuries had changed from those originally claimed, an employer's contest is reasonable. *Brutico*, 866 A.2d at 1156-57.

Claimant argues unreasonable contest fees should have been awarded because she succeeded, in part, in that Employer acknowledged Claimant sustained a work-related injury in the Medical Only NCP and that Employer did not meet its burden of proving that its contest was reasonable. Here, Employer met its burden of proving a reasonable contest. There were numerous factual disputes regarding the nature and extent of Claimant's work injury, the extent of her work-related disability, whether she had fully-recovered, and whether Employer had violated the Act by not paying medical bills it believed were unrelated to Claimant's work injury. These disputes were reflected in the WCJ's credibility determinations, discussed above. Moreover, Employer succeeded on these disputes before both the WCJ and before this Court, except with regard to the question of the payment of

24

certain medical bills. Finally, because Claimant sought to expand the description of the injury beyond that accepted by the Medical Only NCP, sought both partial and full disability, and asserted Employer violated the Act, Claimant would have had to hire an attorney to litigate her claims regardless of Employer's actions. Because Employer's "contest was brought to resolve . . . genuinely disputed issue[s]," it was reasonable. *Second Breath*, 799 A.2d at 901.

F. Reasoned Decision

Section 422(a) of the Act requires that a WCJ issue a reasoned decision and provides, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834. To be "reasoned," an opinion must allow for adequate appellate review by the Board without further elucidation and by this Court under the applicable review standards. *Daniels*, 828 A.2d at 1052. It also must contain the credibility determinations, with the necessary explanations for crediting or discrediting in-person testimony or deposition testimony. *Id.* at 1052-53.

25

Claimant challenges the Remand Decision, dismissing the Claim Petition based on the WCJ's findings that Claimant did not establish **any** work-related disability and that Employer's contest was reasonable, as not being reasoned as required by Section 422(a) of the Act and not in accordance with the Board's 2014 Opinion. Claimant argues the WCJ ignored the undisputed evidence that she had been removed from work for a week and placed on physician-imposed restrictions following the November 15, 2010 work injury and speculated that her absence was due more to her desire not to take the drug test, rather than the injury. She also asserts the WCJ finding Employer's contest reasonable is not reasoned because the WCJ ignored the evidence that Claimant had presented medical bills on the proper forms that were not paid by Employer.

As is apparent from our above analyses, the WCJ's Remand Decision permitted this Court to perform effective appellate review of the issues involved therein.[19] To the extent that Claimant's arguments could be interpreted as arguing that the WCJ capriciously disregarded the evidence, "[a] capricious disregard of the evidence . . . is a deliberate and baseless disregard of apparently trustworthy evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp./Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). However, a "WCJ is not required to accept even uncontradicted" evidence and the "express consideration and rejection" of evidence as not credible is not a capricious disregard of that evidence. *Id.* at 144-45. Here, the WCJ expressly considered the evidence associated with

_____

[19] The initial Decision was also reasoned under Section 422(a). It set forth a summary of the testimony, resolved the conflicts in the evidence, and provided, where required, objective bases for the WCJ's credibility determinations. These bases involved Employer's Expert's greater familiarity with back injuries and the timing of Claimant's Expert's treatment of Claimant, which ended months before Employer's Expert opined that Claimant had fully recovered. (FOF ¶ 13.)

26

Claimant's removal from work and imposition of work restrictions and found this evidence not credible because it had been based on Claimant's complaints of her symptoms and the WCJ had found Claimant not credible. Such consideration and rejection of evidence is not a capricious disregard of evidence. *Id.* at 145. The WCJ's determination that Employer's contest was reasonable was likewise reasoned under the Act. The WCJ had denied Claimant's Petitions based on Employer's presentation of conflicting evidence and legal arguments. Although we are remanding the Penalty Petition in part, Employer presented legal argument challenging the medical bills in the record that were not paid on the basis that they were not related to Claimant's accepted work injury. Accordingly, the Remand Decision met the reasoned decision mandate of Section 422(a) of the Act.

## VII. Conclusion

For the above reasons, we affirm the Board's Order to the extent that it affirmed: the dismissal of the Claim Petition, grant of the Termination Petition, denial of unreasonable contest attorney's fees, and dismissal of the Penalty Petition as related to those medical bills that do not have, in the record, credited evidence that Insurer denied payment of those bills. The Board's Order is reversed to the extent it affirmed the dismissal of the Penalty Petition as it relates to those medical bills that do have, in the record, documentary evidence that they were submitted to Insurer and were denied payment. The matter is remanded to the Board for further remand to the WCJ to make a determination on whether these latter bills were causally-related, or not, to Claimant's accepted work injury and, based on that determination, to direct Employer to pay those bills that are related to the work injury and decide whether the unilateral refusal to pay those bills would be a

27

violation of the Act that would warrant the imposition of a penalty. Additionally, while on remand, the WCJ shall revise Conclusion of Law No. 6 in his initial decision to reflect the date of the WCJ's Decision not the date of Claimant's full recovery.

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tammy Sengle,                                           :
                          Petitioner                    :
                                                        :
            v.                                          :   No. 2006 C.D. 2016
                                                        :
Workers' Compensation Appeal                            :
Board (Lowes Home Centers, Inc.),                       :
                          Respondent                    :

# **O R D E R**

     **NOW**, August 25, 2017, the Order of the Workers' Compensation Appeal Board (Board), entered in the above-captioned matter, is hereby **AFFIRMED** to the extent that it affirmed the dismissal of the Claim Petition, the grant of the Termination Petition, the denial of unreasonable contest attorney's fees, and the dismissal of the Penalty Petition as related to those medical bills that do not have, in the record, credited evidence that Lowes Home Centers, Inc.'s (Employer) or its insurer (Insurer) denied payment of those bills. The Board's Order is **REVERSED** to the extent it affirmed the dismissal of the Penalty Petition as it relates to those medical bills that do have, in the record, documentary evidence of their submission to Employer/Insurer and the denial of payment of those bills. The matter is **REMANDED** for the Workers' Compensation Judge to consider the Penalty Petition and modify Conclusion of Law No. 6 in accordance with the foregoing opinion.

     Jurisdiction relinquished.

                                     _____
                                     **RENÉE COHN JUBELIRER,** Judge